Kuross SAMII, Appellant,

v.

James H. BILLINGTON, Librarian
of Congress, Appellee.

No. 98–5410.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 24, 1999.

Decided Oct. 29, 1999.

David H. Shapiro argued the cause and
filed the briefs for appellant. Diane Bod-
ner entered an appearance.

Diane M. Sullivan, Assistant U.S. Attor-
ney, argued the cause for appellee. With
her on the brief were Wilma A. Lewis,
U.S. Attorney, Mark E. Nagle and R.
Craig Lawrence, Assistant U.S. Attorneys. .

Before: GINSBURG and RANDOLPH,
Circuit Judges, and BUCKLEY, Senior
Circuit Judge.

Opinion for the Court filed by Circuit
Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Dr. Kuross Samii, an employee of the
Library of Congress who classifies himself
as an "Asian American," appeals from the
district court's order on summary judg-

ment rejecting his Title VII claims of retaliation and racial discrimination.

The facts are these. In September 1994, after working three years at the Library as a GS–13 research associate, Dr. Samii applied and was selected for a GS–14 position as a program analysis officer within the Library's Office of the Associate Librarian for Human Resource Services ("HRS"), Affirmative Action and Special Programs Office ("AASPO"). The program analysis officer position is a "budgeted" and "funded" position, meaning Dr. Samii's salary is paid from the portion of the Library's budget specifically allocated for Human Resource Services.

Shortly after starting at the AASPO, Dr. Samii was asked to conduct a study to generate suggestions for improving the effectiveness of the AASPO program. Dr. Samii's study concluded that an internal reorganization would enhance the program's effectiveness. Under a proposed reorganization, Dr. Samii would have received a promotion to the next higher grade level by accretion of duties. The plan was presented to upper management at the Library, who opposed it, as a result of which it was never implemented.

Frustrated by the failed reorganization, Dr. Samii began to explore the possibility of transferring out of AASPO. In late 1995, he wrote to Lloyd Pauls, the Associate Librarian for Human Resources, indicating his desire to transfer to another part of the Library. Mr. Pauls informed Dr. Samii that he was free to transfer to another department so long as he could find an open funded position. According to Library policy, HRS employees could not transfer budgeted salary funds to other divisions of the Library. Employees were permitted to transfer from HRS to other areas of the Library only if they found open positions in other divisions with budgeted funds. In a memo responding to Dr. Samii's request, Mr. Pauls explained that he would approve a transfer to another service unit but not permit the reassign-

ment of Dr. Samii's budget number and salary.

Though still intent on transferring out of the AASPO, Dr. Samii continued in his position as a program analysis officer. While performing his duties, he concluded that the Library was not fully complying with the terms of the *"Cook* settlement"— an agreement settling a lawsuit that alleged discrimination by the Library against its black employees. *See Cook v. Billington,* No. Civ. 82–0400, 1992 WL 276936 (D.D.C. Aug.14, 1992). In May 1995, Dr. Samii notified his supervisor, Denise Banks, that certain reviews required by the settlement, ensuring nondiscrimination in the Library's hiring process, were not being conducted. Ms. Banks passed along this information to her supervisor, Lloyd Pauls. Concerned that the violations had not abated, Dr. Samii conferred with his former supervisor, who encouraged him to report the Library's non-compliance with the settlement agreement. On March 7, 1996, Dr. Samii wrote a memorandum to John Rensbarger, the Inspector General of the Library, informing him that the reviews required under the *Cook* settlement agreement were not being performed. Rensbarger allegedly discussed the matter with the Library's Senior Advisor for Diversity, Jo Ann Jenkins. Dr. Samii claims that Ms. Jenkins spoke with his immediate supervisor, Ms. Banks, and told her to do something about the "troublemakers" on her staff, referring to Dr. Samii's whistle-blowing activity.

Ms. Banks, however, was soon replaced by Carl Whisenton, who became the new Director of the AASPO. Dr. Samii contends that Mr. Whisenton stopped the reorganization of the AASPO, and thereby blocked his promotion. He also claims that Mr. Whisenton removed him from certain management decisions and lessened his duties, and that the combination of these made him vulnerable to an eventual lowering of his grade level.

After these events, Dr. Samii renewed his request to transfer to another division of the Library. In July 1996, he wrote to

the Acting Deputy Librarian, Thomas Carney, asking to be transferred to the Library's Office of Scholarly Programs. After consulting with Lloyd Pauls, Mr. Carney responded that Dr. Samii could transfer only if the Office of Scholarly Programs provided a budget number and funding for the position. Dr. Samii then wrote to Donald Scott, the Deputy Librarian, making the same request to transfer. Ms. Jenkins, at the direction of Mr. Scott, replied to Dr. Samii's request, advising him not to direct any further correspondence to top management at the Library unless cleared by his immediate superiors.

In November 1996, Dr. Samii filed an Allegation of Discrimination with the Library's Equal Employment Opportunity Complaints Office ("EEOC Office"). He listed Ms. Jenkins as the discriminating official and alleged discrimination on the basis of race, sex and national origin. Among other things, Dr. Samii claimed that Ms. Jenkins discriminated against him by treating his request for transfer differently from the requests of other employees who had transferred out of Human Resources. His Allegation of Discrimination did not specify a claim for retaliation nor did it identify any Title VII related protected conduct. In December 1996, Dr. Samii met with Welton Belsches, the EEO counselor assigned to his case. Though Dr. Samii contends that in this interview and in a subsequent one, he discussed retaliatory actions taken against him by Ms. Jenkins, Mr. Belsches maintains that he did not.

On February 14, 1997, Dr. Samii filed a Complaint of Discrimination with the EEOC Office alleging retaliation in addition to discrimination. Since the retaliation claim was not "brought to the attention" of the EEO counselor as required by Library regulations, Dr. Samii was notified that it would not be accepted for processing. *See* Library of Congress Regulation 2010–3.1, § 6(B)(2). On May 13, 1997, in its Final Agency Decision, the EEOC Office rejected Dr. Samii's appeal of its decision refusing to process his retaliation allegation.

Dr. Samii filed this action, invoking Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, shortly thereafter. The district court granted summary judgment for the Librarian, finding that Dr. Samii had failed to establish a prima facie case for retaliation or discrimination. For the reasons that follow, we affirm, but on a different ground.

The parties agree that under *McDonnell Douglas,* to assert a successful Title VII claim, an employee must establish that the employer's asserted nondiscriminatory reasons for its adverse conduct were pretextual. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1553–54 (D.C.Cir.1997). Once an employer articulates a legitimate, nondiscriminatory reason for the challenged employment decision, the employer prevails unless the employee succeeds in discrediting the employer's explanation. *See Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288–89 (D.C.Cir.1998) (en banc). Since the ultimate burden of persuasion in proving retaliation remains with the plaintiff, summary judgment is appropriate when the employee is unable to satisfy this burden. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Paquin v. Federal Nat'l Mortgage Ass'n,* 119 F.3d 23, 27–28 (D.C.Cir.1997); *Chen v. General Accounting Office,* 821 F.2d 732, 739 (D.C.Cir.1987).

The Librarian has provided legitimate nondiscriminatory reasons for not transferring Dr. Samii pursuant to his repeated requests. The denials of his requests were predicated on the Library policy applicable to all HRS employees. Employees transferring to other divisions were not permitted to take their budgeted salaries with them since doing so would result in the department losing the funds allocated to those specific positions.

Dr. Samii never made a request to transfer to an open, funded position in

another division of the Library. Rather, he desired that he be excepted from the general policy and be allowed to take his HRS salary with him to a new position. This, the Librarian points out, was not possible since the program analysis officer position is critical to the AASPO and HRS would have no funds to pay for his replacement's salary. According to Lloyd Pauls, three HRS employees transferred to other Library divisions during the time Dr. Samii made his requests. Each of these employees found budgeted and funded positions in the divisions to which they transferred.

Dr. Samii failed to discredit the existence of the Library's stated transfer policy. He offered no examples of HRS employees who were permitted to reassign their salaries to positions elsewhere in the Library. If funding was the real reason for denying his transfer, Dr. Samii contends that the Library should have granted his request to be detailed to the Office of Scholarly Programs, an action that would not have necessitated funding from the granting service. Doing so, however, would have left the AASPO with no one to perform the program analysis officer's duties and no funding to hire a replacement. Dr. Samii thus failed to present evidence that would lead a reasonable fact finder to disbelieve the Library's proffered reasons for denying his transfer requests. We therefore conclude that Dr. Samii has not met his burden, and that the district court properly granted the Library's motion for summary judgment on the retaliation claim. *See Paquin,* 119 F.3d at 27–28.

Dr. Samii also believes that he was discriminated against by the Library's failure to process his claim for retaliation even though it accepted the retaliation claim filed by a black employee under allegedly identical circumstances. The Library maintains that the retaliation claim was not processed because Dr. Samii failed to bring it to the attention of the EEO coun-

selor in accordance with Library regulations. *See* Library of Congress Regulation 2010–3.1, § 6(B)(2). The district court nevertheless reviewed the claim[1] and, in a ruling we now affirm, found that Dr. Samii failed to establish retaliation. Any harm resulting from the Library's refusal to entertain the retaliation claim has thus been cured. *See Bowden v. United States,* 176 F.3d 552, 555 (D.C.Cir.1999). Since the discrimination claim is derivative of Dr. Samii's meritless retaliation claim, it too must fail.

*Affirmed.*

---

1. The district court reviewed the claim despite determining that Dr. Samii failed to exhaust his administrative remedy. We do not address the exhaustion question in view of the Librarian's failure to preserve it.