**Barbara J. BUSH, Plaintiff,**

**v.**

**Ellen ENGLEMAN, Chair, National
Transportation Safety Board,
Defendant.**

**No. CIV.A. 01–0372(PLF).**

United States District Court,
District of Columbia.

June 4, 2003.

John W. Davis, Washington, DC, for Plaintiff.

David J. Ball, Jr., Assistant United States Attorney, Washington, DC, for Defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motion to dismiss or for summary judgment or, in the alternative, for a more definite statement. Upon consideration of defendant's motion, plaintiff's opposition, defendant's reply and the entire record before it, the Court grants defendant's motion to dismiss with respect to plaintiff's discrimination claims because plaintiff failed to exhaust her administrative remedies, and grants defendant's motion for summary judgment with respect to plaintiff's claim of retaliation.

## I. BACKGROUND

Plaintiff Barbara Bush is an African–American woman who has been a federal government employee for over 40 years and now is employed as Chief of the Facilities Division at the National Transportation Safety Board ("NTSB"). *See* Comp. ¶ 5. Defendant Ellen Engleman is sued in her official capacity as Chairman of the NTSB. Plaintiff alleges that her employer has taken adverse employment actions against her that constitute race and gender discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 633 *et seq.*[1]

Specifically, plaintiff alleges that in 1997 and 1998, she was subjected to insulting and hostile treatment by a management

---

1. Ellen G. Engleman became Chairman of the NTSB on March 24, 2003.

employee at NTSB, Craig Keller, and that defendant refused to remedy this hostile treatment. *See* Comp. ¶¶ 10–23. Allegedly as a result of Mr. Keller's actions and defendant's failure to respond, plaintiff sought equal employment opportunity ("EEO") counseling within the NTSB on November 3, 1998. *See* Defendant's Motion to Dismiss or for Summary Judgment or, in the Alternative, for a More Definite Statement ("Def.Motion"), Exh. 3, Plaintiff's Administrative EEO Complaint at 1 ("EEO Comp.").[2] After she began the internal EEO process, plaintiff asserts, defendant retaliated against her by transferring plaintiff's contracting responsibilities to another division under Mr. Keller. *See id.* ¶¶ 18, 28–30. In addition, plaintiff alleges that after she filed a formal complaint of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), defendant transferred two members of plaintiff's staff to another division. *See id.* ¶¶ 23, 28–30. Plaintiff asserts that these acts constituted illegal discrimination and retaliation based on plaintiff's age, race and gender as well as on her protected EEO conduct, and had the effect of disqualifying plaintiff from performance awards and promotion eligibility. *See id.* ¶¶ 24–26, 28–30.

In describing the circumstances of the alleged discrimination and retaliation, plaintiff also mentions a management study that was commissioned by the NTSB in 1998 and conducted by an outside consultant. *See* Comp. ¶¶ 18–21. The complaint gives few details about the study, but plaintiff acknowledges in her opposition to summary judgment that it was this study that recommended the transfer of certain of plaintiff's responsibilities and staff to another division. *See* Plaintiff's

Opposition to Defendant's Motion to Dismiss or for Summary Judgment or, in the Alternative, for a More Definite Statement at 7 ("Pl.Opp."). While plaintiff does not allege that the outside consultant itself was somehow biased, she suggests that the practical impact of the study—namely, the transfer of duties and staff away from plaintiff—was not legitimate but rather retaliatory, arguing that "[i]rrespective of the management study's report and recommendations, NTSB officials had absolute discretion as to whether to transfer Plaintiff's duties away from her and whether to give them to her harasser [Keller], and they did so. And they made that decision after Plaintiff had entered the EEO process." Pl. Opp. at 7–8.

Defendant describes the management study in greater detail and provides evidence that the study was independent and unbiased and thus that the implementation of its recommendations is inconsistent with plaintiff's theory of retaliation. According to the documents submitted by defendant and uncontested by plaintiff, the study was conducted by outside consultant FPMI Communications, Inc. in an effort to identify ways to meet the NTSB's needs in human resources management and facilities. *See* Def. Motion, Exh. 1, FPMI Communications, "NTSB: A Review of Options for Meeting Human Resource Management and Facilities Needs" at 1 ("FPMI Report"); EEO Comp. ¶ 9. One purpose of the study was to examine which functions should be assigned to the office of the Chief Financial Officer ("CFO"), which position the NTSB had created earlier in 1998. *See* Def. Motion, Exh. 11, Affidavit of Peter Goelz at 3 ("Goelz Aff."). The CFO already was responsible for emergen-

---

**2.** While plaintiff's complaint alleges that she first sought EEO counseling "in about September 1998," plaintiff's sworn administrative EEO complaint and responses to defendant's interrogatories identify the date as November 3, 1998. *See* EEO Comp. at 1; Def. Motion, Exh. 6, Plaintiff's Discovery Responses, Response to Interrogatory No. 4.

cy accident related contracts, and the study considered whether all contracting for the NTSB should be consolidated in the CFO's office. *See id.* at 2; FPMI Report at 28.

In conducting the study, FPMI interviewed plaintiff and other NTSB managers to evaluate the performance and efficiency of each division. *See* FPMI Report at 4. FPMI submitted its written report to the NTSB on January 4, 1999, recommending the transfer of all contracting responsibilities to the CFO's office because contracts "would benefit from assignment to the CFO's Office where some contract oversight is occurring now," and identifying efficiencies and other improvements in the NTSB's operations that could be expected to result from the transfer. *Id.* at 28. The NTSB's management employees immediately took measures to implement FPMI's recommendations. *See id.* at 1. On January 15, 1999, all contracting duties were moved from the Facilities Department (plaintiff's division) to the CFO's office. *See* Goelz Aff. at 3; Battocchi Aff. at 3. Subsequently, the NTSB also transferred two employee slots related to contract work from plaintiff's division to the CFO's office. *See* Def. Motion, Exh. 2, January 25, 1999 E-mail from Keller to CFO Staff.

Shortly after the transfer was announced, plaintiff completed her EEO counseling and, on February 17, 1999, she filed her administrative EEO complaint, alleging age, race and gender discrimination and retaliation by the NTSB. *See* EEO Comp. Roughly two months later, the NTSB announced that it was dismissing plaintiff's discrimination claims for failure to state a claim but would accept her retaliation claim for investigation. *See* Def. Motion, Exh. 4, April 8, 1999 NTSB Notice Letter at 1–2. In giving notice of this partial dismissal of plaintiff's claims,

the agency informed plaintiff of her right to appeal the dismissal of her discrimination claims to the EEOC. *See id.* at 2.

Plaintiff states that she filed a notice of appeal of the partial dismissal with the EEOC on April 30, 1999. *See* Pl. Opp. at 2. While it is unclear whether the EEOC received plaintiff's appeal, the NTSB did receive a service copy of plaintiff's notice of appeal and the Court will proceed on the assumption that her notice was properly filed as she asserts. *See* Def. Motion, Exh. 5, Plaintiff's Notice of Appeal; Def. Reply at 3, n. 2. In the notice, plaintiff stated that she planned to file a brief in support of her appeal "within the time limits provided by the Commission's Regulations appearing at 29 C.F.R. § 1614 *et seq.*" *See id.* at 1. These regulations require that an appeal brief be filed within 30 days of a notice of appeal. *See* 29 C.F.R. § 1614.403(d). Despite her representation that she would file a timely brief, plaintiff did not file a brief in support of her appeal, either within the 30 days or thereafter. *See* Def. Motion at 3–4. Accordingly, when plaintiff later appealed the NTSB's denial of her retaliation claims and the EEOC granted summary judgment to the NTSB on those claims, it held also that plaintiff had waived her right to appeal the NTSB's earlier dismissal of her discrimination claims. *See* Def. Mot., Exh. 8, EEOC Decision at 1, n. 1. Based on the EEOC's denial of relief, plaintiff filed this action in which she reasserts her claims of both discrimination and retaliation.

## II. DISCUSSION

### A. *Discrimination Claims: Failure to Exhaust*

■ With respect to plaintiff's allegations of race, age and gender discrimination and hostile work environment, defendant correctly argues that plaintiff has failed to exhaust her administrative reme-

dies. As defendant notes, Title VII confers the right to file a civil action in federal court only when a party has been "aggrieved by the final disposition of [her administrative] complaint, or by the failure to take final action on [her] complaint." 42 U.S.C. § 2000e–16(c). This exhaustion requirement is mandatory and serves to "allow the agency an opportunity to resolve the matter internally and avoid unnecessarily burdening the courts." *Wilson v. Pena*, 79 F.3d 154, 165 (D.C.Cir.1996). Furthermore, a plaintiff who abandons the administrative process fails to satisfy the exhaustion requirement. "A plaintiff may not cut short the administrative process prior to its final disposition, for upon abandonment a claimant fails to exhaust administrative relief and may not thereafter seek redress from the courts." *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir.1995); *see also Powell v. Reno*, No. 98–2299, 1999 U.S. Dist. LEXIS 18134, at *6 (D.D.C. Nov. 12, 1999) ("A plaintiff who abandons the administrative process mid-stream 'prevents exhaustion and precludes judicial review of those claims.'") (quoting *Greenlaw v. Garrett*, 59 F.3d at 997).

In the present case, plaintiff argues that she exhausted her administrative remedies with respect to her discrimination claims by filing a notice of appeal with the EEOC. *See* Pl. Opp. at 5. While defendant claims that plaintiff abandoned her complaint when she failed to file a supporting brief after promising to do so in her notice of appeal, plaintiff asserts that she was not required to submit a supporting brief and therefore did not abandon her appeal. *See* Def. Motion at 3; Pl. Opp. at 5–6.

Plaintiff is correct that she was not required to file a brief in support of her notice of appeal to the EEOC, even if her notice proffered that such a brief would be submitted. *See* 29 C.F.R. § 1614.403(d) (1999) (providing deadline for "any state-

ment or brief in support of the appeal"); *Watson v. Henderson*, 222 F.3d 320, 322 (7th Cir.2000) ("Section 1614.403(d) is an invitation rather than a command to file a statement."). Plaintiff's subsequent inaction, however, amounts to an abandonment of her appeal, since neither plaintiff nor her attorney took any action to ensure that the appeal was progressing. Specifically, there is no indication that plaintiff informed the EEOC that she would not be filing an appeal brief; checked to confirm that the EEOC had requested the complaint file from the NTSB and was working on the appeal; or inquired about the status of the appeal in any way. Perhaps most important, there is no indication that plaintiff or her attorney took any action when they learned from a footnote in the EEOC's decision on her retaliation claim that the EEOC had no evidence at all that plaintiff had appealed the earlier partial dismissal. The footnote read as follows:

> In her opposition to Summary Judgment, Complainant claimed that this case also included allegations of harassment against the Agency. However, on April 8, 1999, the Agency dismissed these allegations and informed Complainant of her right to appeal the dismissal to the Equal Employment Opportunity Commission, Office of Federal Operations (OFO). There is no evidence, nor did Complainant allege, that she appealed the dismissal of those claims. She, thus, waived them.

Def. Motion, Exh. 8, *Bush v. Hall*, EEOC Decision of Sept. 28, 2000 at 1, n. 1 ("EEOC Decision"). Because the Court finds that plaintiff abandoned her discrimination claims and thus failed to exhaust her administrative remedies with respect to her age, race and gender discrimination claims and her claim of hostile work environment, these claims are dismissed.

## B.  Retaliation Claim

Defendant next asks the Court to grant summary judgment with respect to the sole claim on which plaintiff clearly has exhausted her administrative remedies, her claim of unlawful retaliation.

### 1.  Summary Judgment Standard

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  When considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C.Cir.1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in her favor.  *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. 2505.  To defeat summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims." *Freedman v. MCI Telecommunications Corp.*, 255 F.3d 840, 845 (D.C.Cir.2001); *see Ben–Kotel v. Howard University*, 319 F.3d 532, 536 (D.C.Cir. 2003).

In this case, plaintiff has provided no affidavits or other evidence setting forth facts to demonstrate that there is a genuine issue for trial.  She has failed even to comply with Local Civil Rules 7.1(h) and 56.1, which require one opposing a motion for summary judgment to file a concise statement of material facts as to which it is asserted that there is a genuine issue to be litigated at trial.  The Court therefore could treat defendant's statement of material facts as admitted and plaintiff's obligations under Rule 56 as unmet.  *See* Local Civil Rule 7.1(h); Local Civil Rule 56.1; *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150–54 (D.C.Cir.1996); *Property Analysts, Inc. v. United States*, 1998 WL 395151, at *1 n. 2 (D.D.C. July 10, 1998).  Rather than rest solely on these failures, however, the Court will examine the record before it to determine whether summary judgment is appropriate on the merits.  *See Burke v. Gould*, 286 F.3d 513, 518–19 (D.C.Cir. 2002).

### 2.  Retaliation

■ To establish a *prima facie* case of retaliation sufficient to survive a motion for summary judgment, plaintiff must demonstrate that: (1) she engaged in a statutorily protected activity; (2) her employer subjected plaintiff to adverse personnel action or took an action that had an adverse impact on her employment; and (3) there is a causal link between the protected activity and the adverse action.  *See Morgan v. Federal Home Loan Mortgage Corp.*, 328 F.3d 647 (D.C.Cir.2003); *Forman v. Small*, 271 F.3d 285, 299 (D.C.Cir. 2001); *Thomas v. National Football*

*League Players Ass'n,* 131 F.3d 198, 202 (D.C.Cir.1997), *vacated in part on rehearing on other grounds,* 1998 WL 1988451 (D.C.Cir. Feb. 25, 1998); *Powell v. WMATA,* 238 F.Supp.2d 160, 166 (D.D.C.2002). Here, defendant urges the Court to grant summary judgment on plaintiff's retaliation claim because the record does not support the inference of a causal link between plaintiff's adverse action (the transfer of responsibilities and staff from her to Mr. Keller's division) and her protected activity (seeking EEO counseling and filing an EEO complaint). The Court agrees.

Even when considered in the most favorable light, plaintiff's claim of retaliation suffers from a fundamental inadequacy: nothing in the record suggests that defendant performed the transfer of responsibilities and staff in order to retaliate against plaintiff. Rather, the record fully supports defendant's position that the transfers were made in response to the recommendations of the outside consultant, and plaintiff has offered no affirmative evidence to the contrary and no evidence of retaliatory motive. Instead, plaintiff relies on her own unsubstantiated beliefs and the close timing of plaintiff's protected activity and the challenged transfer. *See* Pl. Opp. at 11. Without more to suggest that the transfer was causally linked to plaintiff's EEO activity, plaintiff cannot make out a *prima facie* case of retaliation.

Plaintiff correctly notes that in some circumstances, causation may be inferred from a proximity in time between the protected activity and the adverse action. *See, e.g., Forman v. Small,* 271 F.3d at 299; *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985). Plaintiff urges the Court to draw such an inference here, relying heavily on the fact that defendant's decision came within several months of her initial EEO activity. Pl.

Opp. at 7–8. But such closeness in time does not inevitably or necessarily support an inference of causation, particularly where the inference is undermined by the timing of other related events. As the Supreme Court has made plain, an inference of causation is not appropriate when the adverse action being challenged is the result of a nondiscriminatory process that began before the protected conduct. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). In this case, the uncontradicted record indicates that the decision to implement the transfer resulted from an independent review process that began months *before* plaintiff's EEO activity. *See* EEO Comp. at 3, ¶ 6; Goelz Aff. at 2–3. In light of *Bredeen* and the facts present in this case, plaintiff's theory of temporal proximity cannot support an inference of causation.

Even if the timing of defendant's decision might support an inference of causation sufficient to make out a *prima facie* case, plaintiff's retaliation claim cannot survive summary judgment where defendant presents specific evidence of a legitimate, non-retaliatory reason for its action and plaintiff is unable to demonstrate that the reason is a pretext. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the employer produces evidence that it acted for a legitimate, nondis-

criminatory reason, to survive summary judgment the plaintiff must produce evidence from which a reasonable jury could conclude that she was rejected for a discriminatory reason. *See Waterhouse v. District of Columbia,* 298 F.3d 989, 992 (D.C.Cir.2002); *Freedman v. MCI Telecommunications Corp.,* 255 F.3d at 844; *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1290 (D.C.Cir.1998) (*en banc*).

■ Here, defendant relies on numerous documents and affidavits to demonstrate that the transfer was made pursuant to the independent consultant's report as part of an effort to improve agency performance and that it reflected the Chairman's goal to consolidate contracting duties under a single authority. *See, e.g.,* Goelz Aff. at 2–3; FPMI Report at 1. In the words of the consultant's report, contracts "would benefit from assignment to the CFO's office where some contract oversight is occurring.... [The] CFO's office would also be the logical organizational home for contracts." FPMI Report at 28. The statements of a management employee of the NTSB confirm that "the reason [for the transfer] was the restructuring of our financial management duties ... This was strictly a structural decision." Battochi Aff. at 3; *see also* Goelz Aff. at 3; Def. Mot., Exh. 13, Affidavit of Joseph Osterman at 3–4 ("Osterman Aff."); Exh. 14, Affidavit of Craig Keller at 3–4. The transfer also was consistent with past agency practice: in prior years, the contracting function had been located solely in the Comptroller's office. *See* Goelz Aff. at 3. Plaintiff has presented no evidence to suggest that this justification is mere pretext and therefore has not met her burden

of rebuttal. *See Freedman v. MCI Telecommunications Corp.,* 255 F.3d at 844. Consequently, defendant's explanation must prevail. "Since the ultimate burden of persuasion in proving retaliation remains with the plaintiff, summary judgment is appropriate when the employee is unable to satisfy this burden." *Samii v. Billington,* 195 F.3d 1, 3 (D.C.Cir.1999).

For these reasons, the Court concludes that plaintiff has failed to make out a *prima facie* case of retaliation or, in the alternative, that she has failed to demonstrate that defendant's proffered reason for the transfer is merely a pretext for retaliation. Accordingly, the Court grants summary judgment with respect to plaintiff's claim of retaliation. Because this is the sole remaining claim, the Court dismisses plaintiff's case in its entirety.[3]

An Order and Judgment consistent with this Opinion will issue this same day.

SO ORDERED.

### ORDER AND JUDGMENT

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendant's motion to dismiss plaintiff's claims of discrimination [7–1] is GRANTED; it is

FURTHER ORDERED that defendant's motion for summary judgment with respect to plaintiff's claim of retaliation [7–2] is GRANTED; it is

FURTHER ORDERED that defendant's motion for more definite statement [7–3] is DENIED as moot; it is

---

3. Defendant moves in the alternative for a more definite statement of plaintiff's claim that defendant transferred "additional duties" out of plaintiff's division. *See* Def. Motion at 13–14; Pl. Comp. ¶ 24. Because it appears that plaintiff included this claim only as an additional reference to her general claim of retaliation, the Court will treat this allegation as subsumed within that claim and therefore subject to the Court's grant of summary judgment. Accordingly, the motion for more definite statement is denied as moot.

FURTHER ORDERED that this case is DISMISSED from the docket of this Court; and it is

FURTHER ORDERED that this Order and Judgment shall constitute a FINAL JUDGMENT in this case. This is a final appealable order. *See* Rule 4(a), FED. R. APP. P.

SO ORDERED.