Vijayakumar MOSES, Plaintiff,

v.

**HOWARD UNIVERSITY HOSPITAL, Defendant.**

**Civil Action No. 01–2528 (PLF).**

United States District Court, District of Columbia.

Feb. 12, 2007.

and the entire record in this case, the Court concludes that there are genuine issues of material fact in dispute with respect to plaintiff's termination and that the defendant therefore is not entitled to judgment as a matter of law on that claim. The Court concludes that defendant is entitled to judgment as a matter of law with respect to the other adverse employment actions alleged by plaintiff, however, and will enter judgment for defendant as to those claims.

## I. BACKGROUND

### A. Procedural History

Plaintiff Vijaykumar Moses alleges that he was subjected to various adverse employment actions and eventually terminated in retaliation for filing a discrimination case with this Court in February 1999. *See Moses v. Howard University Hospital,* Civil Action No. 99–0410 (D.D.C. filed Feb. 22, 1999). In that case, plaintiff alleged race and national origin discrimination and retaliation in violation of Title VII; race discrimination and retaliation in violation of the DCHRA; and age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* On January 30, 2001, Judge Huvelle entered summary judgment for defendant on all the claims except the ADEA claim. *Moses v. Howard University Hospital,* Memorandum Opinion, Civil Action No. 99–0410 (D.D.C. Jan. 30, 2001). The parties settled the ADEA claim on or about May 17, 2001, and the action was voluntarily dismissed with prejudice.

Vijayakumar Moses, Riverdale, MD, Pro se.

Daretia M. Hawkins, Howard University, Washington, DC, for Defendant.

### OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant Howard University Hospital's motion for summary judgment.[1] Plaintiff brings suit alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.,* and the District of Columbia Human Rights Act ("DCHRA") D.C.Code § 2–1401 *et seq.* Upon consideration of the motion, opposition, and reply,

---

1. The briefs submitted in connection with this motion include: Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Mot."); Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Opp.").

The depositions and declaration upon which the Court relies are: Deposition of Vijaykumar Moses ("Moses Dep."), Def. Exs. 3, 28, Pl.Ex. 4; Declaration of Vijaykumar Moses ("Moses Decl."), Pl.Ex. 5; Deposition of Alem Moges ("Moges Dep."), Def. Ex. 3; Deposition of Helen Mitchell, ("Mitchell Dep.") Def. Ex. 2, Pl.Ex. 2; and Deposition of Dennis Hermonstyne ("Hermonstyne Dep."), Def. Ex. 4, Pl.Ex. 1.

Plaintiff was terminated in October 2000 while his discrimination case was pending before this Court. Thereafter, he filed complaints with the Equal Employment Opportunity Commission and the District of Columbia Office of Human Rights, and received a "right to sue" letter from the EEOC on September 14, 2001. Def. Ex. 5, EEOC Charge of Discrimination and Right to Sue Letter. On December 6, 2001, plaintiff filed the instant case alleging retaliation in violation of Title VII and the DCHRA.

### B. Facts

Plaintiff Vijaykumar Moses was employed as a senior computer operator at Howard University Hospital from November 1985 until October 2000, when he was terminated. Def. Ex. 1, Plaintiff's Personnel Records. Plaintiff's job responsibilities included supervising the operation of all data processing equipment for the shift, helping staff with "recognition and correction of production problems" and assessing computer problems. Def. Ex. 16, Senior Computer Operator Position Description. Immediately prior to his termination, plaintiff worked the 4 p.m. to midnight shift. Moges Dep. at 37. Mr. Moses' immediate supervisor was Helen Mitchell, Manager of Systems Analysis and Planning and Interim Manager of Computer Operations. Mitchell Dep. at 11–14. From 1999 to 2000, Ms. Mitchell shared supervision of the computer center with Alem Moges, then the manager of Network Services. Hermonstyne Dep. at 27–28. Mr. Moges' schedule overlapped with plaintiff's schedule so that Mr. Moges had more contact with Mr. Moses than Ms. Mitchell did. Moges Dep. at 8, 10–11; Hermonstyne Dep. at 18. Mr. Moses disputes whether Mr. Moges had the authority to supervise him because Mr. Moges was not his direct supervisor. Moses Dep. at 26; Hermonstyne Dep. at 28.

Plaintiff and defendant agree that Mr. Moges, Ms. Mitchell, and Mr. Hermonstyne first became aware of the previous lawsuit upon which the instant retaliation suit is predicated in or around January or very early February of 2000, when Mr. Moges and Mr. Hermonstyne learned that they were to be deposed. See Moges Dep. at 40; Mitchell Dep. at 43; see also Moses Dep. at 42 (plaintiff never spoke to Mr. Moges, Ms. Mitchell or Mr. Hermonstyne about his lawsuit).

1. Events Prior to January 2000

Plaintiff's own handwritten notes indicate that management warned him about sleeping on the job in May of 1999. Def. Ex. 7, Plaintiff's Notes. On Aug. 4, 1999, Mr. Moges reprimanded plaintiff after catching him sleeping for at least ten minutes on the job. Def. Ex. 10, Moges Note. Mr. Moges also told plaintiff that he previously had seen plaintiff sleeping at work, and plaintiff responded that his cholesterol and diabetes medicines make him tired and force him to sleep. Mr. Moges threatened to write up plaintiff for dereliction of duty if he caught him sleeping again. Id. Sleeping in the computer room was specifically prohibited by the Hospital. See Def. Ex. 17, 1997 Management Information Systems Memorandum ("Individuals found sleeping in the Computer Room, will be subject to disciplinary action.").

In a July 1999 performance evaluation, Ms. Mitchell gave plaintiff a "superior" rating out of the following categories, in descending order: excellent, superior, average, unsatisfactory. Def. Ex. 15, July 30, 1999 Personnel Evaluation of Moses ("1999 Eval.") at 6. She commented in the evaluation that plaintiff "needs to take a more positive attitude toward his position, responsibilities and leadership expectancies." Id. In response, plaintiff asked for more training, and wrote in the employee comments section: "I do an excellent job

all the time so I must get an excellent evaluation." *Id.* Ms. Mitchell testified in her deposition that she gave plaintiff the benefit of the doubt on the evaluation because she was new to the job, but she said that often he could not perform assigned tasks, troubleshoot and "grasp" new technology. Mitchell Dep. at 31.

On October 1, 1999, Mr. Moges placed plaintiff on administrative leave with pay for two days after an argument over the conditions of plaintiff's dinner break Def. Ex. 11, Moses Security Department Report, Memo to Moses from Moges. Plaintiff and defendant agree that Mr. Moges told plaintiff to take a dinner break. When plaintiff did not do so, Mr. Moges asked how long plaintiff's current task would take. According to Mr. Moges, plaintiff accused Mr. Moges of harassing him and trying to catch him sleeping, and called security to report Mr. Moges. *Id.* Plaintiff alleged that Mr. Moges harassed him by calling him crazy and threatening to fire him if he sleeps. *Id.* On October 4, 1999, plaintiff also alleged that Mr. Moges made a fist in a threatening gesture during the October 1 argument, although plaintiff did not assert this in his initial, same-day complaint to security. *Id.* After a meeting with management on October 5, 1999, plaintiff agreed to take standard 45–minute breaks instead of the one-hour breaks he had sought, and to follow the hospital's break policy in the future. Def. Ex. 15, October 7, 1999 Hermonstyne Memo and Summary of Meeting. Mr. Hermonstyne recommended the same day that plaintiff be terminated for "distorting the facts" about the incident, as well as for sleeping on the job on August 4, 1999. *Id.*

On November 2, 1999, Janice Viera reported to Mr. Hermonstyne that plaintiff had been more than an hour late to a computer training class, had been "inattentive" and found the class difficult to follow. Def. Ex. 26, Janice Viera Memo. Mr. Mog-es sent plaintiff a "final written warning," dated November 22, 1999, that stated: "Further incidents of unprofessional conduct and bouts of insubordination will result in further disciplinary action, including and up to termination of your employment from Howard University Hospital." Def. Ex. 12, Final Written Warning.

2. Events in and after January 2000

Although plaintiff filed the previous case in this Court against defendant in February 1999, Mr. Moses' superiors did not learn of the lawsuit until around the time of Mr. Moges' and Mr. Hermonstyne's depositions taken in that case in early 2000. *See* Mitchell Dep at 43; Moges Dep at 77–78. Mr. Moges also testified that he did not know about plaintiff's EEOC complaint of discrimination filed in May 1998 (plaintiff filed an amended complaint adding retaliation in June 1998) until the time of the deposition. Moges Dep. at 12.

Plaintiff testified that after the depositions in the earlier case in early 2000:

No one would talk to me. Everyone change their face, became no communication.... Work area look like a big battlefield.... [Moges] challenge me three, four times. We are in the same ship. You won't be here. You will be out of this ship. I am the captain of this ship.

Moses Dep. at 55. On June 30, 2000, Ms. Mitchell gave plaintiff a performance evaluation in which she assessed him as "average," down five points on a 70–point scale from the previous year's rating. Pl.Ex. 2, Dep. Ex. 2, Moses 2000 Performance Evaluation. Ms. Mitchell also wrote in the appraisal that plaintiff had taken a sick day each pay period for several months, often calling in only one hour before his shift. *Id.* Plaintiff responded to the evaluation: "I am sick means I am sick. Now you are questioning my sickness ... your evaluation is unfair and it is only a person-

al attack against me, so I wouldn't sign it." *Id.*

Plaintiff and defendant agree that three events immediately preceded plaintiff's termination, although they disagree on the exact details. On October 7, 2000, Jacqueline Street, a control clerk, said plaintiff asked her to help him with a computer/printer error message. Def. Ex. 19, Street Memo. Ms. Street said that Mr. Moges noticed plaintiff having difficulty, and suggested "power off, power on," to which plaintiff asked "What is that, how do you do that?" *Id.* According to Ms. Street, Mr. Moges asked plaintiff how a computer operator could not know how to turn on a computer, and plaintiff responded by "harassing" Mr. Moges, telling him to "get out of my face!" and accusing Mr. Moges of hiding job knowledge. *Id.* Ms. Street and Mr. Moges said that Ms. Street tried to quiet plaintiff down. *Id.;* Def. Ex. 19, Moges Memo on Unprofessional Behavior. Plaintiff testified that he was trying to fix the problem by talking to the manufacturer on the phone, but that Mr. Moges came in and yelled at him to fix the printer. Moses Dep. at 29.

On the night of October 16, 2000, plaintiff again faced a problem he could not fix. Yvonne Bracey, a supervisor who reported the incident, said that the staff called plaintiff for help when printers in one of the units were not working. Plaintiff gave the staff a phone number to call Mr. Moges at home but refused to make the call himself. Def Ex. 20, Bracey Memo. When the staff called, the person who answered said she did not know anyone named Moges, and the problem remained unsolved until the next day. *Id.* Mr. Hermonstyne said that standard procedure is for the computer operator to call the manager himself. Def. Ex. 23, Hermonstyne Termination Memo. Mr. Hermonstyne said he learned of the problem that night, but that plaintiff said he did not know any details about it, so Mr. Hermonstyne told plaintiff

he was useless. *Id.* Mr. Hermonstyne asked a computer operator starting on the next shift to go to the unit to try and solve the problem, but that operator was unsuccessful. *Id.*

The next day, October 17, 2000, plaintiff answered a phone call about a computer problem. Plaintiff later reported that Mr. Moges had told him to write down the problem, then "snatched" the paper from him, called him stupid and useless and threatened to fire him. Def. Ex. 24, Moses' Report to Security, October 17, 2000. Plaintiff said he was not trained to handle such a problem, felt threatened by Mr. Moges and accused him of "hiding job knowledge" from him. *Id.* Mr. Moges contends that plaintiff's message about the problem contained insufficient information, and that when he asked plaintiff to find out more, plaintiff refused, saying he was not qualified to address the problem. Mr. Moges said he also told plaintiff that if he cannot assess the problem before automatically passing it to a manager, he is not useful to the department. Def. Ex. 21, Memo from Moges to Hermonstyne, October 18, 2000. After this incident Mr. Moges put plaintiff on leave for "obscene behavior, insubordination and continuous poor performance." Def. Ex. 22, Memo from Moges to Moses, October 17, 2000.

Mr. Hermonstyne cited the three October incidents in recommending on October 18, 2000 that human resources terminate plaintiff for being "derelict in his duty, insubordinate and demonstrat[ing] a lackadaisical attitude towards his responsibilities as a Senior Computer Operator." Def. Ex. 23, Hermonstyne Termination Memo. The hospital states that it sent notices by hand delivery on October 24, 2000 and by certified mail on October 25, 2000, asking plaintiff to attend a meeting to discuss the incidents of October 16 and 17. Def. Ex. 25, Hermonstyne Termi-

nation Letters to Moses. Plaintiff responds that he did not attend the meeting because he did not receive these notices. Moses Decl. ¶ 3. Plaintiff sent two letters to Mr. Hermonstyne by certified mail, on October 19, 2000 and October 28, 2000, seeking to return to work. Pl. Exs. 6, 7, Letters from Vijaykumar Moses to Dennis Hermonstine (sic). He was terminated by letter from Mr. Hermonstyne on October 31, 2000. Def. Ex. 25, Hermonstyne Termination Letters to Moses. Plaintiff said that he did not learn of his termination until he received a letter on December 1, 2000 from human resources. Moses Decl. ¶ 3. According to his personnel records, defendant was terminated for "unsatisfactory work performance." Def. Ex. 1, Plaintiff's Personnel Records.

## II. DISCUSSION

### A. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c) Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Holcomb v. Powell*, 433 F.3d 889, 895 (D.C.Cir.2006). In considering a summary judgement motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505; *see Mastro v. Potomac Electric Power Co.*, 447 F.3d 843, 849–50 (D.C.Cir.2006); *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1288 (D.C.Cir.1998) (en banc).

The non-moving party's opposition, however, must consist of more than unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. FED.R.CIV.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence must allow a jury reasonably to find for the plaintiff, and if the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. 2505. To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support his claims." *Freedman v. MCI Telecommunications Corp.*, 255 F.3d 840, 845 (D.C.Cir.2001). In an employment discrimination case, "[u]sually, proffering evidence from which a jury could find that the employer's stated reasons were pretextual will be enough to get a plaintiff's claim to a jury." *George v. Leavitt*, 407 F.3d 405, 413 (D.C.Cir.2005) (citing *Carpenter v. Fed. Nat'l Mortgage Ass'n*, 165 F.3d 69, 72 (D.C.Cir.1999)) (internal quotations omitted).

### B. Retaliation

■■■ To establish a *prima facie* case of retaliation, "the plaintiff must present evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse action against her; and (3) the adverse action was causally related to the exercise of her rights." *Holcomb v. Powell*, 433 F.3d at 901–02 (internal quotations and citations omitted); *see also Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C.Cir.2006). An employee's burden at this stage "is not great; he merely needs to establish facts adequate to permit an inference of retaliatory motive." *Holcomb v. Powell*, 433 F.3d at 903 (quoting *McKenna v. Weinberger*, 729 F.2d 783, 790

(D.C.Cir.1984)). Once an employee makes such a showing, it "raises a 'rebuttable presumption of unlawful discrimination,'" shifting the burden to the defendant to rebut such presumption. *Smith v. District of Columbia,* 430 F.3d 450, 455 (D.C.Cir. 2005) (quoting *Jones v. Wash. Metro. Area Transit Auth.,* 205 F.3d 428, 433 (D.C.Cir. 2000)).

■■■ A defendant rebuts the presumption of discrimination by offering a legitimate, non-discriminatory or non-retaliatory reason for its action. *See Holcomb v. Powell,* 433 F.3d at 901; *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792 at 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendant does so, "the presumption of discrimination 'simply drops out of the picture,' and 'the sole remaining issue [i]s discrimination *vel non.*'" *Mastro v. Potomac Electric Power Co.,* 447 F.3d at 854 (quoting *Holcomb v. Powell,* 433 F.3d at 896 and *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (other internal citations omitted)). At that point, the Court must assess "whether a reasonable jury could infer intentional discrimination' from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were discriminatory or that the non-discriminatory justification was pretextual." *Smith v. District of Columbia,* 430 F.3d at 455 (quoting *Murray v. Gilmore,* 406 F.3d 708, 713 (D.C.Cir.2005)). *See also Mastro v. Potomac Electric Power Co.,* 447 F.3d at 854 (at this point, to survive summary judgment, plaintiff must show that "a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason.") (quoting *Holcomb v. Powell,* 433 F.3d at 896). "All of the evidence" that the Court must consider is

> any combination of (1) evidence establishing the plaintiff's prima facie case;

(2) evidence the plaintiff presents to attack the employer's preferred explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer.

*Mastro v. Potomac Electric Power Co.,* 447 F.3d at 855 (citing *Holcomb v. Powell,* 433 F.3d at 896 and *Aka v. Wash. Hosp. Ctr.,* 156 F.3d at 1289).

### 1. Plaintiff's Termination

Defendant and plaintiff agree that plaintiff has met the requirements of the first two prongs of the *prima facie* test regarding plaintiff's termination. First, plaintiff engaged in a protected activity by making a discrimination complaint to the EEOC in 1998 and filing a lawsuit in 1999 based on that complaint. Second, defendant thereafter took an adverse action against plaintiff by terminating him from employment. The parties disagree over whether plaintiff has satisfied the third prong, which requires a causal connection between the protected activity and the adverse action. Finally, defendant argues that even if plaintiff has succeeded in making out a *prima facie* case, he has not demonstrated that the legitimate, non-retaliatory reason articulated by defendant for his termination is pretextual.

■■ A plaintiff may establish a causal connection between his participation in a protected activity and an adverse action through temporal proximity alone by showing that (1) the employer knew that the plaintiff engaged in protected activity, and that (2) the adverse action took place shortly after plaintiff's participation in that activity. *See Holcomb v. Powell,* 433 F.3d at 903; *see also McKenna v. Weinberger,* 729 F.2d at 791 (plaintiff established *prima facie* retaliation case because her dis-

charge occurred "so closely" (22 days) after she complained about sexism). Courts generally have accepted time periods of between a few days and a few months between the protected activity and the adverse action, but have seldom allowed periods of more than a year to create the inference of a causal connection. *See Brodetski v. Duffey*, 199 F.R.D. 14, 17 (D.D.C. 2001) (citations omitted). "But such closeness in time does not inevitably or necessarily support an inference of causation, particularly where the inference is undermined by the timing of other related events." *Bush v. Engleman*, 266 F.Supp.2d 97, 103 (D.D.C.2003) (no inference of causation despite only several months lapse because personnel changes already had been planned); *see also Chandamuri v. Georgetown University*, 274 F.Supp.2d 71, 85 (D.D.C.2003) (noting that "where 'mere temporal proximity' is the only evidence of causation, the proximity must be 'very close,'" and that a three to four month proximity has been held to be insufficient) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)).

Plaintiff argues that the accurate measure of time should start from when his managers on the ground first found about out his original discrimination lawsuit, which was apparently at or around the time that each of the managers was deposed in relation to that suit in January or February of 2000. Opp. at 10–11. Plaintiff testified that he never talked to Mr. Hermonstyne, Mr. Moges or Ms. Mitchell about the lawsuit he filed in February 1999. Moses Dep. at 12. Mr. Hermonstyne was deposed on January 27, 2000. *See* Hermonstyne Dep. Mr. Moges was deposed on February 1, 2000. *See* Moges Dep. Ms. Mitchell testified that she learned about the lawsuit after Mr. Hermonstyne complained about his deposition. Mitchell Dep. at 43–44. Mr. Moses argues that the Court can infer a retaliatory mo-

tive based on the fact that he was first given a less favorable evaluation in June 2000, less than six months after the depositions, and that he was fired in October 2000, less than ten months after these three managers discovered that he had filed a discrimination suit.

Defendant counters by pointing to the fact that these managers had documented problems with plaintiff starting at least in May 1999—well before they were aware of Mr. Moses' discrimination complaint and earlier lawsuit. Prior to becoming aware of the lawsuit, Mr. Moses' managers had already done the following: reprimanded him for sleeping on the job; told him to improve his attitude and motivation; placed him on administrative leave for refusing to follow break policies and then arguing about it; criticized him for tardiness and not taking computer training classes seriously; and gave him a final written warning in November 1999 that further unprofessional conduct would prompt his termination. Even considered in the light most favorable to plaintiff, defendant argues, none of these actions could have been evidence of retaliation because they occurred before the managers knew about his discrimination complaints and discrimination lawsuit. The Court agrees that even though the 1999 incidents could not themselves be considered retaliatory, they provide context for evaluating later events that resulted in a lower evaluation score for Mr. Moses in June 2000 and the conflicts immediately preceding plaintiff's termination in October 2000. They therefore help to explain defendant's non-retaliatory reasons for the termination.

Nevertheless, drawing all reasonable inferences in plaintiff's favor, as the Court must on a motion for summary judgment, the Court finds that plaintiff has made out a *prima facie* case that his ter-

mination was retaliatory. First, plaintiff describes a change in the atmosphere of the workplace after his supervisor's learned of his lawsuit from the early 2000 depositions, and specifically references a threat by Mr. Moges that plaintiff would be terminated. Moses Dep. at 55 ("[Mr. Moges] challenge me three, four times. We are in the same ship. You won't be here. You will be out of this ship. I am the captain of this ship."). Second, plaintiff has demonstrated that at least one adverse action—his lower evaluation score in June 2000—took place within approximately five months of his managers having learned about his previous suit. Four months later, he was fired. In addition to the timing of these two adverse employment actions taken in the months following his supervisors' discovery of the 1999 discrimination case, plaintiff also has presented evidence that the decisionmaker in his termination—Mr. Hermonstyne—was "complaining" about being deposed in that case, providing additional support for the inference that there was a causal connection between that lawsuit and both adverse actions that followed. Finally, defendant states that plaintiff's failure to respond to Mr. Hermonstyne's letters left "little alternative but to terminate his employment." Mot. at 11. Plaintiff maintains, however, that he never received those letters, and furthermore asserts that he sent letters of his own to Mr. Hermonstyne during that time period asking what was happening with respect to the incidents, to which he never received a reply. The Court therefore finds that Mr. Moses has made out a *prima facie* case of retaliation. The burden now shifts to defendant to provide a non-discriminatory reason for terminating plaintiff and rebut the presumption of discrimination. *See Smith v. District of Columbia*, 430 F.3d at 455.

Defendant provides numerous witnesses and documents to support its nondiscriminatory explanation for terminating plaintiff, and substantial evidence that plaintiff's termination was due to a series of incidents in October 2000. Defendant has further supported its explanation with evidence that plaintiff was a difficult employee whom hospital managers considered unreliable and had threatened to fire in 1999, well before they knew about his discrimination case before this Court. Defendant has adequately rebutted the presumption created by plaintiff's *prima facie* case. The Court therefore now must consider the sole issue before it: "discrimination *vel non.*'" *Mastro v. Potomac Electric Power Co.*, 447 F.3d at 854.

■ Plaintiff counters defendant's explanation of his termination with his own version of these events, a version supported almost exclusively by his own testimony. Whether he can prove any of his allegations at trial on that basis alone, particularly in light of the evidence defendant likely will present, remains to be seen. Nevertheless, for the same reasons on which the Court concluded that plaintiff has made out his *prima facie* case, the Court finds that he has raised genuine issues of material fact with respect to the events leading up to his termination that the Court "cannot resolve without evaluating witness credibility and weighing the evidence, neither of which is appropriate at the summary judgment stage." *Czekalski v. Peters*, 475 F.3d 360 at 368–69 (D.C.Cir. 2007). *See also George v. Leavitt*, 407 F.3d at 413 ("[A]t the summary judgment stage, a judge may not make credibility determinations, weigh the evidence, or draw inferences from the facts—these are jury functions, not those of a judge ruling on a motion for summary judgment."); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C.Cir.2000) (holding that plaintiff's evidence supporting *prima facie* case could also permit a jury to conclude that defen-

dant's articulated non-discriminatory reason was a pretext for retaliation).

## 2. Other Adverse Employment Actions

Plaintiff alleges in his complaint that the hospital retaliated against him in ways other than termination. He states that he was criticized; called dumb; "constantly told I speak foreign language and cannot be understood;" and wrongfully denied promotions, raises, training and overtime for purposes of retaliation. Compl. at 3–4. Defendant argues that summary judgment should be granted because "there is no evidence to support some of the vague claims" set forth in Mr. Moses' complaint. Mot. at 12. The Court agrees that plaintiff has not demonstrated even a *prima facie* case because in some cases he has failed to provide evidence to support any reasonable inference that the defendant took the alleged adverse action, and because in other cases, the action alleged occurred before he maintains the relevant persons became aware of his discrimination complaint, and therefore no causation can be inferred from any of the actions taken.

Plaintiff presented no evidence of being harassed because he spoke a foreign language or could not be understood. Mr. Hermonstyne admitted calling plaintiff "useless" when plaintiff could not do the requested task, Def. Ex. 23, Hermonstyne Termination Memo, and Mr. Moges criticized plaintiff for not being able to do what Moges considered plaintiff's job. But these criticisms are not the basis of plaintiff's retaliation claim. Plaintiff's claims that he was denied overtime, promotions and training in retaliation for his discrimination complaint are similarly unsupported by the evidence. Ms. Mitchell testified that all computer operators were eligible for overtime, but that she does not remember plaintiff requesting it and that the unit did not have much overtime available because it was adequately staffed. Mitchell Dep. at 24. The one piece of evidence plaintiff submitted in support of his overtime contention is a hospital pay log showing that for the pay period ending October 23, 1999, plaintiff worked 80 hours and his colleague, Young Choi, worked 112 hours. This pay period took place, however, before plaintiff's managers allegedly knew about his discrimination complaints, so any overtime allotment favoring Choi could not have been retaliatory. Similarly, plaintiff was denied a promotion after applying on June 23, 1998, well before his managers were aware of any complaint and before he filed the discrimination suit upon which this retaliation claim is predicated. Finally, plaintiff attended a computer training class in the autumn of 1999 and was reported on November 2, 1999 to have done poorly. Def. Ex. 26, Viera Memo. Again, this incident occurred before he maintains that his managers were aware of his earlier discrimination suit. Plaintiff submits no other evidence that he was denied other opportunities. The Court therefore will grant defendant's motion with respect to these allegations of retaliation.

## III. CONCLUSION

For the reasons stated above, this Court concludes that genuine issues of material fact remain with respect to Mr. Moses' termination claim. Defendant therefore is not entitled to summary judgment on this claim. With respect to all other adverse employment actions that Mr. Moses alleges were taken in retaliation for his filing a discrimination complaint and lawsuit, the Court will enter judgment for the defendant. A separate Order consistent with this Opinion will issue this same day.

## ORDER

For the reasons set forth in the Opinion issued this same day, it is hereby

ORDERED that defendant's motion for summary judgment [34] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that plaintiff's request to the Court to decide the case [39] is DENIED as moot; it is

FURTHER ORDERED that plaintiff's "motion to verdict (sic) the case" [40] is DENIED as moot; and it is

FURTHER ORDERED that a status conference is scheduled for March 13, 2007 at 9:30 a.m. in Courtroom 29A to discuss how the parties wish to proceed.

SO ORDERED.