# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 7, 2010          Decided June 1, 2010

No. 08-7087

VIJAYAKUMAR MOSES AND JANET M. NESSE,
APPELLANTS

v.

HOWARD UNIVERSITY HOSPITAL,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:01-cv-02528-PLF)

*James C. Strouse* argued the cause and filed the brief for appellants. *Janet M. Nesse* entered an appearance.

*Stephen E. Baskin* argued the cause and filed the brief for appellee.

Before: SENTELLE, *Chief Judge*, TATEL, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: In 2001, Vijayakumar Moses ("Moses") filed suit against Howard University Hospital ("Howard") claiming retaliation in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"), *as amended*, 42 U.S.C. § 2000e *et seq.*, and the D.C. Human Rights Act of 1977 ("DCHRA"), D.C. CODE § 2-1401.01 *et seq.* After filing this lawsuit, Moses twice filed for bankruptcy in the District of Maryland. However, in his bankruptcy filings, Moses failed to disclose the existence of this lawsuit as required by 11 U.S.C. § 541. Upon discovering these failures to disclose, Howard filed a renewed motion for summary judgment on the ground that Moses's claims should be barred by judicial estoppel. The District Court granted Howard's motion, and Moses now appeals. On appeal, Howard raises two additional grounds to support the dismissal of this suit. First, Howard argues that Moses lacks standing to maintain this appeal. Second, Howard contends that Moses's notice of appeal was untimely under FED. R. APP. P. 4(a).

We hold that Moses has standing to appeal. In June 2009, Janet M. Nesse ("Nesse"), the trustee appointed to oversee Moses's Chapter 7 bankruptcy estate, abandoned the estate's claims in this case. *See* 11 U.S.C. § 554(a). "[W]hen property of the bankrupt is abandoned, the title 'reverts to the bankrupt, *nunc pro tunc*, so that he is treated as having owned it continuously.'" *Morlan v. Univ. Guaranty Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002) (quoting *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 394 n.1 (9th Cir. 1964)) (emphasis added). Once the trustee abandoned the estate's claims, Moses was free to seek redress as if no bankruptcy petition had been filed. *See* 5 COLLIER ON BANKRUPTCY ¶ 554.02[3], p. 554-5 (15th ed. rev. 2008).

We also hold that Moses's notice of appeal was timely filed. On July 1, 2008, the District Court entered judgment for Howard against Moses. On July 9, 2008, Nesse, acting as trustee, filed a motion under FED. R. CIV. P. 59(e) to amend the District Court's opinion and judgment to clarify that judicial estoppel applied only if Moses elected to pursue his retaliation claims in

his own right. Nesse's Rule 59(e) motion tolled the 30-day notice of appeal requirement of Rule 4(a). *See* FED. R. APP. P. 4(a)(4)(A)(iv). On August 25, 2008, while the time for appeal was still tolled, Moses filed a notice of appeal in his own right. The retroactive effect of the trustee's abandonment ensured that Moses had standing to file a notice of appeal on August 25, 2008. On February 19, 2009, the District Court resolved Nesse's Rule 59(e) motion and Moses's previously filed notice of appeal took effect.

Finally, we uphold the District Court's application of judicial estoppel and affirm the summary judgment granted in favor of Howard. "Courts may invoke judicial estoppel '[w]here a party assumes a certain position in a legal proceeding, . . . succeeds in maintaining that position, . . . [and then,] simply because his interests have changed, assume[s] a contrary position.'" *Comcast Corp. v. FCC*, 600 F.3d 642, 647 (D.C. Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Even after he had filed for bankruptcy, Moses continued to hold himself out before the District Court as a valid plaintiff, a position which was "clearly inconsistent" with his pursuit of relief in bankruptcy. *See Maine*, 532 U.S. at 750 (internal quotation marks omitted). "[J]udicial acceptance of an inconsistent position in a later proceeding . . . create[s] the perception that either the first or the second court was misled," thus posing a threat to judicial integrity. *See id.* (internal quotation marks omitted). Moses "derive[d] an unfair advantage" in maintaining and controlling this lawsuit by falsely holding himself out as a proper party. *Id.* at 751. Therefore, the District Court did not err in applying judicial estoppel against Moses. Accordingly, we affirm.

## I. BACKGROUND

On February 22, 1999, appellant Moses filed the first of two lawsuits against Howard, his then-employer, alleging race discrimination, national origin discrimination, and retaliation in

violation of Title VII; race discrimination and retaliation in violation of the DCHRA; and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* On January 30, 2001, the District Court entered summary judgment for Howard on all counts except those related to Moses's ADEA claim. *See Moses v. Howard Univ. Hosp.*, Civ. Action No. 99-0410 (D.D.C. Jan. 30, 2001) ("*Moses I*"). The parties subsequently settled the ADEA claim, and the case was dismissed with prejudice. *See Moses v. Howard Univ. Hosp.*, Civ. Action No. 01-2528, slip op. at 2 (D.D.C. July 1, 2008) ("*Moses III*") (describing the proceedings in the initial lawsuit).

In October 2000, Moses was terminated by Howard. Moses then filed complaints with the Equal Employment Opportunity Commission ("EEOC") and the District of Columbia Office of Human Rights, contending that he was dismissed in retaliation for filing the 1999 lawsuit against Howard. On September 14, 2001, Moses received a "right to sue" letter from the EEOC. He then filed the instant lawsuit with the District Court. In his complaint, Moses alleged that Howard had retaliated against him in violation of Title VII and the DCHRA. Howard denied the charges and moved for summary judgment.

While this lawsuit was pending in District Court, Moses initiated two separate bankruptcy proceedings. On September 20, 2003, Moses filed for bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* This action was brought in the District of Maryland, with Nesse assigned to serve as trustee of Moses's bankruptcy estate. A Chapter 7 proceeding "authorizes a discharge of prepetition debts following the liquidation of the debtor's assets by a bankruptcy trustee, who then distributes the proceeds to creditors. . . . Under Chapter 7 the debtor's nonexempt assets are controlled by the bankruptcy trustee." *Marrama v. Citizens Bank of Mass.*,

549 U.S. 365, 367 (2007). On January 5, 2004, Moses secured a discharge of approximately $20,000 in debt pursuant to his Chapter 7 bankruptcy petition.

In early 2007, Moses again filed for bankruptcy in the District of Maryland, this time under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq*. "Chapter 13 authorizes an individual with regular income to obtain a discharge after the successful completion of a payment plan approved by the bankruptcy court. . . . [U]nder Chapter 13 the debtor retains possession of his property" during the course of the bankruptcy proceeding. *Marrama*, 549 U.S. at 367. The bankruptcy court rejected Moses's proposed payment plan and his Chapter 13 proceeding was closed on June 25, 2007.

In each of his bankruptcy proceedings, Moses was required to execute, under penalty of perjury, a "Statement of Financial Affairs" setting forth "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." *Moses III*, slip op. at 5 (citing Defendant's Statement of Undisputed Material Facts in Support of its Renewed Motion for Summary Judgement ("Def.'s Undisputed Facts") ¶¶ 13-14, *reprinted in* Joint Appendix ("J.A.") 3). A debtor is required to disclose all potential claims in a bankruptcy petition. *See* 11 U.S.C. §§ 521(1), 541(a)(1). This means that a debtor is under a duty both to disclose the existence of pending lawsuits when he files a petition in bankruptcy and to amend his petition if circumstances change during the course of the bankruptcy. *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005); *In re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999). And when an estate is in bankruptcy under Chapter 7, the trustee is the representative of the estate and retains the sole authority to sue and be sued on its behalf. *See Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004).

Nesse retained this authority as trustee in the Chapter 7 bankruptcy proceeding.

Despite these disclosure requirements, Moses failed to reveal the existence of this lawsuit in either his Chapter 7 or Chapter 13 bankruptcy proceedings. He did, however, disclose his involvement in separate civil actions involving the garnishment of his wages. *See Moses III*, slip op. at 5 n.3 (citing Def.'s Undisputed Facts ¶¶ 13, 19, J.A. 3, 4).

Moses's action in this case remained live in the District Court during the course of both bankruptcy proceedings. On February 12, 2007, the District Court "conclude[d] that genuine issues of material fact remain[ed] with respect to Mr. Moses's termination claim[, and thus ruled that Howard was] not entitled to summary judgment on this claim." *Moses v. Howard Univ. Hosp.*, 474 F. Supp. 2d 117, 127 (D.D.C. Feb. 12, 2007) ("*Moses II*"). The court also ruled that, "[w]ith respect to all other adverse employment actions that Mr. Moses allege[d] were taken in retaliation for his filing a discrimination complaint and lawsuit, [it would] enter judgment for [Howard]." *Id.* The District Court subsequently set a trial date for Moses's claim that his termination from employment constituted unlawful retaliation.

While preparing for trial in this case, Howard uncovered Moses's Chapter 7 and Chapter 13 bankruptcy proceedings. Howard also determined that Moses had neither disclosed this action to the bankruptcy courts nor disclosed the bankruptcy proceedings to the District Court. On December 6, 2007, with this newly discovered information in hand, Howard renewed its motion for summary judgment, arguing that judicial estoppel barred Moses from maintaining this suit. In early 2008, after Howard had revealed Moses's failures to disclose, Moses moved to reopen his Chapter 7 bankruptcy proceeding in the District of Maryland to amend his original "Statement of Financial Affairs" to reflect the existence of this lawsuit. On January 24, 2008, the

bankruptcy court granted Moses's motion and reappointed Nesse as trustee of the estate. While Howard's renewed motion for summary judgment was still pending before the District Court, Nesse and Howard commenced negotiations over a possible settlement of the pending retaliation claim.

On July 1, 2008, the District Court granted Howard's renewed motion for summary judgment. *See Moses III*, slip op. at 1-13. On July 9, 2008, Nesse filed a Rule 17(a) motion to substitute herself as plaintiff in this action. *See* FED. R. CIV. P. 17(a). On the same day, Nesse also filed a Rule 59(e) motion to amend the opinion and judgment in *Moses III*, to clarify that judicial estoppel would apply in this case solely against Moses in the event that he acted in his own right to pursue the retaliatory termination claim. *See* FED. R. CIV. P. 59(e). Moses filed a notice of appeal on August 25, 2008, contesting the District Court's dismissal of his suit.

On February 19, 2009, the District Court approved Nesse's Rule 17(a) and Rule 59(e) motions. *See Moses v. Howard Univ. Hosp.*, Civ. Action No. 01-2528, slip op. at 1-8 (D.D.C. Feb. 19, 2009) ("*Moses IV*"). The District Court corrected the case docket to show Nesse as plaintiff, and amended its July 1, 2008 judgment and opinion to clarify that its judicial estoppel holding only applied to the extent that the retaliation claim was "prosecuted by Mr. Moses on his own behalf." *Id.* at 6. Subsequently, when settlement negotiations between Nesse and Howard failed to yield an agreement, Nesse notified the bankruptcy court that she sought to abandon Moses's claim in this case as property of the estate. *See* 11 U.S.C. § 554(a). The bankruptcy court approved Nesse's abandonment on June 26, 2009. *See* Order Authorizing Abandonment of Property of the Estate 1-2, *reprinted in* J.A. 494-95.

In this appeal, appellant Moses argues that the District Court erred in granting summary judgment to Howard on judicial estoppel grounds. Howard counters that judicial

estoppel applies in this case; Howard further contends that (1) Moses lacks standing to pursue this appeal and (2) this court lacks jurisdiction to hear the case because Moses failed to timely file his notice of appeal within 30 days of the judgment below. *See* FED. R. APP. P. 4(a).

## II. ANALYSIS

### A. *Standing*

"The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action. . . . [E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [the Supreme] Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (internal quotation marks and citations omitted).

In the context of bankruptcy proceedings, it is well understood that "a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam). The commencement of Chapter 7 bankruptcy extinguishes a debtor's legal rights and interests in any pending litigation, and transfers those rights to the trustee, acting on behalf of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (indicating that a bankruptcy estate includes "all legal or equitable interests of the debtor in property"); *id.* § 323 (establishing the bankruptcy trustee as the "representative" of

the estate with the "capacity to sue and be sued" on its behalf). Thus, "[g]enerally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Parker*, 365 F.3d at 1272; *accord Turner v. Cook*, 362 F.3d 1219, 1225-26 (9th Cir. 2004); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535 (4th Cir. 1997).

Howard argues that only Nesse, the trustee of the bankruptcy estate, and not Moses, had standing to pursue the claims in this case. That was true until June 2009, when Nesse abandoned the estate's claims in this case. An outstanding legal claim that is abandoned by the trustee reverts back to the original debtor-plaintiff. *See* 11 U.S.C. § 554(a) (directing that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome . . . or that is of inconsequential value and benefit to the estate"); *id.* § 554(c) (directing that "any property scheduled . . . [but] not otherwise administered at the time of the closing of a case is abandoned to the debtor and [considered] administered"). "'[U]pon abandonment . . . the trustee is . . . divested of control of the property because it is no longer part of the estate. . . . Property abandoned under [§] 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed.'" *Kane*, 535 F.3d at 385 (quoting 5 COLLIER ON BANKRUPTCY ¶ 554.02[3], p. 554-5); *see also Parker*, 365 F.3d at 1272.

Whatever interest passed to the trustee when Moses filed for Chapter 7 bankruptcy was extinguished when Nesse abandoned the cause of action in this case. *Cf. Brown v. O'Keefe*, 300 U.S. 598, 602 (1937). In other words, "when property of the bankrupt is abandoned, the title reverts to the bankrupt, *nunc pro tunc*, so that he is treated as having owned it continuously." *Morlan*, 298 F.3d at 617 (internal quotation marks and citation omitted) (emphasis added). The retroactive effect of the

trustee's abandonment ensured that Moses had standing to file a notice of appeal on August 25, 2008, when he did. And, as explained below, Moses's notice of appeal was effective on February 19, 2009, when the District Court disposed of the trustee's Rule 59(e) motion.

## B. *Timeliness*

A court of appeals has no jurisdiction to entertain an appeal that is filed outside of the time limits prescribed by FED. R. APP. P. 4(a)(1)(A) and 28 U.S.C. § 2107(a). *See Bowles v. Russell*, 551 U.S. 205 (2007). These time limits are "mandatory and jurisdictional," and failure to file a timely notice of appeal defeats the jurisdiction of a court of appeals. *Id.* at 210 (internal quotation marks and citations omitted). Howard contends that Moses's appeal should be dismissed, because it was not "filed with the district clerk within 30 days after the judgment or order appealed from" was entered. *See* FED. R. APP. P. 4(a)(1)(A). We disagree.

The District Court entered its original order granting Howard's motion for summary judgment on July 1, 2008. As noted above, Nesse, acting as trustee, filed a Rule 59(e) motion on July 9, 2008, seeking to amend the District Court's judgment. Rule 4(a) provides that "[i]f a party timely files [a motion to alter or amend a judgment under Rule 59], the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." *Id.* at 4(a)(4)(A). In other words, once Nesse filed her Rule 59(e) motion, this tolled the time for the filing of an appeal.

Moses filed his notice of appeal on August 25, 2008, during the time when the Rule 59(e) motion was still pending and the time for filing an appeal was tolled. His notice of appeal was thus early, not late. The trustee's Rule 59(e) motion was not disposed of until February 19, 2009, the date when the time to file an appeal commenced to run for all parties. Where, as in

this case, the notice of appeal was filed before the District Court resolved the pending Rule 59(e) motion, the notice of appeal became effective when the order disposing of the 59(e) motion was entered. *See* FED. R. APP. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment – but before it disposes of any motion listed in Rule 4(a)(4)(A) – the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."). In other words, Moses's early notice of appeal was "in effect, suspended until the [59(e)] motion [was] disposed of, whereupon, the previously filed notice effectively place[d] jurisdiction in the court of appeals." *See* Advisory Committee's Notes on FED. R. APP. P. 4(a)(4), 28 U.S.C. App.

On the record here, we conclude that Moses's notice of appeal was timely. The initial time for an appeal commenced running on July 1, 2008. The 30-day limit was tolled on July 9, 2008, when Nesse filed her 59(e) motion. Moses's August 25, 2008 notice of appeal was filed within this tolled period. And as noted above, the retroactive effect of the trustee's abandonment ensured that Moses had standing to file a notice of appeal on August 25, 2008. The time for an appeal began running again on February 19, 2009, when the District Court entered its order disposing of Nesse's motion. Moses's notice of appeal, filed almost seven months earlier, thus became effective on February 19.

Howard does not dispute these calculations, but instead argues that Nesse's Rule 59(e) motion could not have tolled Moses's filing time period, because Nesse was not a "party" to the lawsuit when she filed her motion. This argument fails. At the time when the trustee filed her Rule 17(a) and Rule 59(e) motions, she was the only party who had a right to pursue the cause of action that had been initiated by Moses. As noted above, "a pre-petition cause of action is the property of the

Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Parker*, 365 F.3d at 1272. Nesse's Rule 17(a) motion was a mere formality to confirm on the court's docket papers that the trustee, and not Moses, was the proper plaintiff in this case. If there was a live case in the District Court in July 2008 – and there was – the only proper plaintiff was the trustee, not Moses. And the trustee surely had the right to file a Rule 59(e) motion, because the District Court's decision in *Moses III* – dismissing the case on grounds of judicial estoppel – directly affected the trustee's authority to pursue the cause of action on behalf of the estate.

It is also quite clear that the trustee cannot in any way be faulted for her actions. Moses secured a discharge of his debt on January 5, 2004, pursuant to the judgment entered in his Chapter 7 bankruptcy proceeding. It was not until early 2008, after Howard had uncovered Moses's failures to disclose, that Moses moved to reopen his Chapter 7 bankruptcy proceeding in the District of Maryland to amend his original "Statement of Financial Affairs" to reflect the existence of this lawsuit. Nesse became aware of the situation when the bankruptcy court granted Moses's motion and reappointed Nesse as trustee of the estate on January 24, 2008. And after her reappointment, Nesse commenced negotiations with Howard in an effort to settle this lawsuit on behalf of the bankruptcy estate. Nesse then filed her Rule 59(e) motion after settlement talks failed and the District Court granted summary judgment in favor of Howard on grounds of judicial estoppel. Nesse's Rule 59(e) motion plainly was an action taken by the *real* plaintiff in the case, for her motion sought to alter the judgment in *Moses III* to clarify that judicial estoppel did not apply to the trustee acting on behalf of the bankruptcy estate. If Nesse had not secured relief under Rule 59(e), the trustee would have been bound by the judgment in *Moses III* holding that judicial estoppel barred further pursuit of this case. This would have impaired the trustee's authority to pursue this cause of action on behalf of the estate. The trustee's

Rule 17(a) and Rule 59(e) motions merely served to confirm, not initiate, the trustee's party status. Howard's suggestion that Nesse was not a party when she filed her Rule 59(e) motion is thus without merit.

## C. *Judicial Estoppel*

### 1. *Standard of Review*

The District Court granted summary judgment in favor of Howard on the ground that Moses's claim is barred by judicial estoppel. This court reviews the District Court's grant of summary judgment *de novo*, *see, e.g.*, *Haynes v. Williams*, 392 F.3d 478, 481 (D.C. Cir. 2004), and "must view the evidence in the light most favorable to the nonmoving party," *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002). The D.C. Circuit, however, has yet to determine the standard governing the review of District Court applications of judicial estoppel. The Supreme Court has indicated that judicial estoppel "'is an equitable doctrine invoked by a court at its discretion,'" *Maine*, 532 U.S. at 750 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotation marks and citation omitted)), and "[a] majority of [the] circuits that have addressed the issue apply the abuse of discretion standard." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1046 (8th Cir. 2006); *see also Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30-31 (1st Cir. 2004) (citing *In re Coastal Plains*, 179 F.3d at 205; *Talavera v. Sch. Bd.*, 129 F.3d 1214, 1216 (11th Cir. 1997); *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 616-17 (3d Cir. 1996); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996); *United States v. Garcia*, 37 F.3d 1359, 1367 (9th Cir. 1994)). *But see Eubanks v. CBSK Fin. Group*, 385 F.3d 894, 897 (6th Cir. 2004) (applying a *de novo* standard of review); *accord United States v. Hook*, 195 F.3d 299, 305 (7th Cir. 1999). We need not decide the question in this case. We find that, whether reviewed *de novo* or pursuant to an abuse of discretion

standard, the District Court did not err in granting summary judgment to Howard on grounds of judicial estoppel.

Furthermore, because "a federal court's ability to protect itself from manipulation should not depend upon the law of the state under which some or all of the claims arise," *see Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007), Moses's pendent D.C. law claims, as well as his federal claims, are subject to federal principles of judicial estoppel. *See also Ogden Martin Sys. v. Whiting Corp.*, 179 F.3d 523, 527 n.1 (7th Cir. 1999); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 602-04 (9th Cir. 1996); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 n.4 (6th Cir. 1982); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 n.4 (4th Cir. 1982).

2. *The District Court Did Not Err in Applying Judicial Estoppel in This Case*

Until 2001, with the issuance of the Supreme Court's decision in *New Hampshire v. Maine*, 532 U.S. at 742, judicial estoppel was "disfavored" in the D.C. Circuit. *So. Pac. Transp. Co. v. ICC*, 69 F.3d 583, 591 n.3 (D.C. Cir. 1995). However, in *Maine*, the Court spoke approvingly of judicial estoppel. The Court noted that judicial estoppel "'prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding,'" *Maine*, 532 U.S. at 749 (quoting 18 MOORE'S FEDERAL PRACTICE § 134.30 (3d ed. 2000)), and explained that judicial estoppel is "'an equitable doctrine invoked by a court at its discretion,'" *Maine*, 532 U.S. at 750 (quoting *Rolfs*, 893 F.2d at 1037). Since *Maine*, this court has recognized and applied the doctrine as instructed by the Supreme Court. *See Comcast Corp.*, 600 F.3d at 647.

While "'[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle,'" *Maine*, 532 U.S. at 750

(quoting *Zurich Ins. Co.*, 667 F.2d at 1166), we have explained that "[c]ourts may invoke judicial estoppel '[w]here a party assumes a certain position in a legal proceeding, . . . succeeds in maintaining that position, . . . [and then,] simply because his interests have changed, assume[s] a contrary position.'" *Comcast Corp.*, 600 F.3d at 647 (quoting *Maine*, 532 U.S. at 749). There are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped? *See Maine*, 532 U.S. at 750-51.

It appears that every circuit that has addressed the issue has found that judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case. *See Eastman*, 493 F.3d at 1157-60; *Cannon-Stokes v. Potter*, 453 F.3d 446, 447-48 (7th Cir. 2006); *Jethroe*, 412 F.3d at 599-601; *Barger v. City of Cartersville*, 348 F.3d 1289, 1293-97 (11th Cir. 2003); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-85 (9th Cir. 2001); *United States ex rel. Gelbert v. Transp. Admin. Servs.*, 260 F.3d 909, 917-19 (8th Cir. 2001); *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir. 1993); *see also Eubanks*, 385 F.3d at 898-99 (declining to apply judicial estoppel where failure to disclose the claim to the bankruptcy court appeared inadvertent).

We think it is clear from the Court's discussion in *Maine*, and at least implicit in the holdings of many of our sister circuits, that a court may not invoke judicial estoppel against a

party (1) who has engaged in misconduct in a separate judicial proceeding, (2) but there is no meaningful connection between that proceeding and the judicial proceeding in which judicial estoppel is sought. There must be a discernible connection between the two proceedings. *See, e.g.*, *Cannon-Stokes*, 453 F.3d at 447 (noting that the debtor "represented that she had no [legal] claim[s] [before the bankruptcy court]; . . . [and] that representation had prevailed; she had obtained a valuable benefit in the discharge of her debts," but "[n]ow she wants to assert the opposite in order to win a second time"); *Transp. Admin. Servs.*, 260 F.3d at 918 (noting that the debtors "represented to the bankruptcy court that they did not have any contingent claims" and that they "stood to benefit from the inconsistent positions put forward" because the new claim "was not theirs for purposes of bankruptcy, but it was theirs for the purposes of a later . . . action"); *Hamilton*, 270 F.3d at 784 (noting that the debtor "failed to list his claims . . . as assets on his bankruptcy schedules, *and then later sued . . . on the same claims*") (emphasis added); *Payless Wholesale Distribs.*, 989 F.2d at 571 (The debtor, "having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis."). In short, a court may not invoke judicial estoppel against a party who has engaged in misconduct in a separate proceeding if that proceeding is unrelated to the current proceeding.

With this caveat, and taking into account the three considerations addressed in *Maine*, we are satisfied that the District Court did not err in applying judicial estoppel in this case. First, Moses continued to hold himself out before the District Court as a proper plaintiff, a position which was clearly inconsistent with his pursuit of bankruptcy. The inconsistency did not arise simply as a result of the fact that "neither [Moses] nor [his] attorney ever listed the discrimination claim as an asset" in his bankruptcy proceedings. *Barger*, 348 F.3d at 1295. Rather, the inconsistency stems from the fact that Moses "had

already filed and was pursuing [his] employment discrimination claim at the time [he] filed [his] bankruptcy petition[s]." *Id*. at 1294-95. He continued to pursue his initial discrimination claim even though he was no longer a proper plaintiff once he sought Chapter 7 bankruptcy.

Second, the bankruptcy court's decision to initially discharge Moses from Chapter 7, and the District Court's decision to allow this case to continue even during the pendency of Moses's bankruptcy proceedings, leaves little doubt that Moses succeeded in hiding the inconsistency from the courts and "creat[ing] the perception that either the first or the second court was misled." *Maine*, 532 U.S. at 750.

Third, Moses's assertion that he did not derive any unfair advantage because Howard "was not a creditor nor had any interest in . . . [his] bankruptcies," Appellant Br. at 19, is misguided. In maintaining this suit without disclosing it in his bankruptcy proceedings, Moses set up a situation in which he could gain an advantage over his creditors. In other words, had he prevailed in his lawsuit against Howard, he would have kept any damages for solely himself, to the detriment of his creditors. Moses's inconsistent positions also adversely affected Howard. Had the trustee known of this lawsuit during the Chapter 7 bankruptcy proceedings, she might have settled this case early or decided not to pursue it, actions that might have benefitted Howard.

Finally, it is clear here that Moses's actions in the bankruptcy proceedings and before the District Court were related. Moses "represented that [he] had no [legal] claim[s] [before the bankruptcy court] . . . [and] that representation had prevailed; [he] had obtained a valuable benefit in the discharge of [his] debts," but "[n]ow [he] wants to assert the opposite in order to win a second time." *Cannon-Stokes*, 453 F.3d at 447. Moses offended the integrity of the District Court by presenting himself as a proper party in that court on the basis of a position

that was flatly inconsistent with the position taken in the bankruptcy proceedings. *Payless Wholesale Distribs.*, 989 F.2d at 571.

Moses cannot avoid judicial estoppel by claiming that his failure to disclose this lawsuit in the bankruptcy court or his maintenance of the suit in District Court were the result of "'inadvertence or mistake.'" *See Maine*, 532 U.S. at 753 (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)). Moses failed to disclose the existence of this case in two separate bankruptcy proceedings, yet in both of those proceedings he listed pending lawsuits that, unlike the instant case, reduced the overall value of his assets through wage garnishment. *See Moses III*, slip. op. at 5 n.3 (citing Def.'s Undisputed Facts ¶¶ 13, 19, J.A. 3, 4).

And Moses's argument that he cured his failure to disclose by reopening his Chapter 7 case, amending his "Statement of Financial Affairs," and inviting Nesse to intervene in the suit, is wholly unpersuasive. As the Eleventh Circuit noted, allowing such a debtor to "back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive" for the debtor "to provide the bankruptcy court with a truthful disclosure of [his] assets," *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002), and would similarly diminish the doctrine's ability to deter the debtor from pursuing claims in the District Court to which he is not entitled. *See also Eastman*, 493 F.3d at 1160; *Barger*, 348 F.3d at 1297; *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003).

## III.  CONCLUSION

For the foregoing reasons, the judgment of the District Court is affirmed.