*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-156

MELINDA DENNIS, ET AL, APPELLANTS,

V.

PATRICK G. JACKSON, ET AL., APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(CAM-873-16)

(Hon. Elizabeth C. Wingo, Trial Judge)

(Argued February 2, 2021     Decided September 16, 2021)

*Ray M. Shepard*, was on the brief for appellants.

*Janet A. Forero, Derek M. Stikeleather*, were on the brief for appellees.

Before GLICKMAN, *Associate Judge,* THOMPSON, *Associate Judge\*,* and LONG, *Senior Judge, Superior Court of the District of Columbia.\*\**

---

 *\** Judge Thompson was an Associate Judge of the court at the time of argument. Although Judge Thompson's term ended on September 4, 2021, she continues to serve as an Associate Judge until her successor is confirmed. See D.C. Code § 11-1502 (2012 Repl.) ("Subject to mandatory retirement at age 74 and to the provisions of subchapters II and III of this chapter, a judge of a District of Columbia court appointed on or after the date of enactment of the District of Columbia Court Reorganization Act of 1970 shall serve for a term of fifteen years, and upon completion of such term, such judge shall continue to serve until the judge's successor is appointed and qualifies.").

(continued…)

LONG, *Senior Judge*: In this medical malpractice case, appellants (husband and wife) challenge the grant of summary judgment against them in favor of appellees, Patrick G. Jackson, M.D., and Georgetown University Hospital ("the Hospital"). In detailed findings and conclusions of law set forth in open court on December 18, 2018, and incorporated by reference in a written order on the same date, the Hon. Elizabeth C. Wingo granted appellees' motion to dismiss or, in the alternative, for summary judgment. The judgment on appeal is based upon the application of the doctrine of judicial estoppel. The doctrine recognizes that where a party successfully assumes a certain position in a legal proceeding, that party may not subsequently assume a contrary position in a different proceeding, simply because that party's interests have changed, particularly where the change in position results in an unfair advantage to that party or where the change works an unfair detriment upon another party. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). We affirm.

Here, the invocation of the doctrine of judicial estoppel arose from appellants' failure to disclose their malpractice claim as a potential asset in their

_____

(…continued)

** Sitting by designation pursuant to D.C. Code § 11-707(a) (2012 Repl.).

bankruptcy petition in the United States Bankruptcy Court of Maryland. The bankruptcy Trustee and the creditors whose debts where discharged were unaware of this potential asset when the case was closed with the order of discharge. Ordinarily, a failure to divulge a potential lawsuit as an asset in bankruptcy bars litigation of the civil action in question. Based upon our analysis of the record and pertinent case law, we conclude that appellants have failed to establish any abuse of discretion in the trial court's application of judicial estoppel. We further conclude that appellants did not satisfy their burden to establish their chosen defense, i.e. that the failure to disclose was the product of inadvertence or mistake. We also hold that it was not error for the trial court to decline to submit the substance of this defense to a jury, because the process of determining whether to apply judicial estoppel is an equitable analysis to be performed by a judge and because the remedy sought is equitable in nature.

I.      **Procedural Background and Undisputed Material Facts**

While it is not relevant or necessary for us to probe the underlying merits of the malpractice allegations, it is still important to summarize the essential nature of this case. This is so because the character of the allegations is pertinent to explaining when Ms. Dennis first knew that she had a basis for filing a civil action. The timing of her knowledge of the claim is significant.

Dr. Jackson performed abdominal surgery upon Ms. Dennis on October 5, 2012 at the Georgetown University Hospital. Shortly after being discharged on October 7, 2012, Ms. Dennis encountered multiple problems from poor site drainage, G-tube drainage, and other issues. Multiple additional surgeries followed, performed by different surgeons, to alleviate the deleterious ill effects and aftermath of the original surgery. The complaint, filed on February 4, 2016, included multiple counts, articulating issues ranging from negligence in performance of surgery, negligence in failing to obtain informed consent, gross negligence, and loss of consortium for Ms. Dennis and her husband.

The various counts in the complaint reflected a specific demand for over $10 million in money damages. Appellants sought compensatory damages for personal injury to Ms. Dennis. They included present and future pain and suffering, past and future lost wages of Ms. Dennis, her loss of earning capacity, present and future loss of her household services, her past and future medical expenses, mental anguish, permanent physical injuries and disfigurement, and loss of consortium for both appellants. The complaint originally included a demand for punitive damages, although that particular demand was deleted when appellants filed an Amended Complaint.

In analyzing the legal issues, we are further informed by the timeline of events, weaving together the bankruptcy proceeding and the civil action that

followed. As early as the summer of 2013, Ms. Dennis had decided that she wanted to file suit against Dr. Jackson, and she admitted this in a declaration filed with her opposition to the motion whose resolution is now on appeal, as well as in her deposition.

On November 20, 2014, appellants filed a petition in bankruptcy. Ms. Dennis confirmed in her declaration that they did so because her inability to return to work after her initial surgery caused appellants to be unable to pay their existing debts.

Every bankruptcy petition includes informational schedules requiring the petitioner to divulge relevant information, including the petitioner's assets and liabilities, both actual and contingent. On "Schedule B – Personal Property," a petitioner is directed to identify assets in myriad, enumerated categories (from bank accounts, to household goods, jewelry, real estate, and more). Among those categories is one with the following heading: "Other contingent and unliquidated claims of every nature, including tax refunds counterclaims of the debtor, and rights to set off claims. Give estimated value of each." In their Schedule B, appellants listed nothing in this category, placing a capital X under a linked column denominated as "NONE."

Although appellees were not bankruptcy creditors, appellants did list as an outstanding debt the sum of $302.36 in various co-pays owed to KCI USA, Inc.

(hereinafter "KCI"). It is uncontested that these charges stemmed from billings for wound dressings allegedly necessary to ameliorate the physical damage caused by the alleged malpractice of appellees.

On March 9, 2015, the United States Bankruptcy Judge issued an order discharging $86,163.06 in debts. The order of discharge included the entire debt owed to KCI. Almost a year later, on February 4, 2016, appellants filed the instant civil action against the Hospital and Dr. Jackson.

II.    **The Dispositive Motion and Positions of the Parties Below**

Appellees filed on March 13, 2017, a motion to dismiss or, in the alternative, for summary judgment, based specifically on the doctrine of judicial estoppel because of the failure to divulge the potential lawsuit as an asset in the bankruptcy proceeding. In their opposition to the motion, appellants argued that the failure to list the civil action as an unliquidated asset was the product of mistake or inadvertence. Moreover, appellants emphasized that material issues of disputed fact still remained, in their view, because appellees were not among the creditors whose debts were discharged, and that appellants therefore could not derive any unfair advantage over appellees.

At a hearing on November 21, 2017, the trial court denied the motion without prejudice to appellees re-raising the issue of estoppel, after completion of discovery. The trial court specified that if information in discovery proved that

there was a "meaningful connection" between the bankruptcy proceedings and the instant lawsuit, all elements of judicial estoppel would be established. The trial judge focused on the "connection" issue because instructive case law provides that judicial estoppel is not triggered where there is "no meaningful connection" between the bankruptcy proceeding and the subsequent litigation. *Moses v. Howard University Hospital*, 606 F.3d 789, 799 (D.C. Cir. 2010).

After completion of discovery, appellees did file a follow-up motion for summary judgment on May 23, 2018, setting forth the exact nature of the connection and thus reviving the issue of judicial estoppel for final adjudication. This was the context in which Judge Wingo convened the hearing on December 18, 2018, at which she reconsidered all elements of judicial estoppel and concluded that appellees were entitled to a judgment in their favor. We set forth below the essential positions of the parties with respect to the dispositive motion that is now the subject of this appeal. A synopsis of their positions gives context for understanding the present contentions of appellants as to why the judgment should be reversed.

As the moving parties, appellees emphasized that the bankruptcy case had a "meaningful connection" to the present malpractice action because (1) on Schedule F of the Bankruptcy Petition, appellants listed KCI as one of their creditors, and (2) the debt of $302.36 owed to KCI was for dressing materials ordered by another

physician for closure of an abdominal wound that is the same wound that is the subject of the instant lawsuit. Furthermore, appellees stressed that all of the elements necessary for judicial estoppel were established and that the doctrine should be invoked not only to protect the integrity of the judicial system (including the Bankruptcy Court) but also to protect the interests of "the creditors, who planned their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements."

Appellants, in opposition, argued that there were multiple, remaining contested issues of material fact, such that summary judgment was unsupportable. They identified the contested issues as: (1) whether there was still a "meaningful connection" between the KCI debt and the claims of creditors in the bankruptcy proceeding because of the allegedly "miniscule" amount of the KCI debt (compared to the potential damages in the civil action) and because appellees were not creditors in the bankruptcy proceeding; (2) whether appellants intentionally sought to mislead the Bankruptcy Court, asserting that there was no evidence of a deliberate motive to do so and contending that there was no proof that appellants knew of a basis for seeking punitive damages under Maryland law); and (3) that there was no evidence that appellants intentionally sought to gain an unfair advantage specifically over appellees in this civil action and where the non-disclosure itself is not proof of such intent.

The issue of mistake or inadvertence was a key aspect of the opposition to the motion for summary judgment, and we note it because it is the foundation of the overall position of appellants before this court. Ms. Dennis attempted to excuse why she did not reveal her potential civil action in her Bankruptcy Court petition. She made certain explanations in her deposition (taken on November 18, 2016), as well as in a sworn declaration (hereinafter "Declaration") that accompanied her opposition to appellees' renewed motion for summary judgment.

In her deposition, she testified that "mostly likely" in 2014, a fellow church member referred her to the attorney who did agree to represent her and who sent the Hospital a Notice of Intention to File Suit on or about July 1, 2015. In her declaration, Ms. Dennis elaborated:

> As I testified in my deposition, I began having thoughts of filing a lawsuit against Dr. Jackson for the harm he caused me in the summer of 2013 after I had been under the care of [another physician] for several months. While I certainly wanted to file a lawsuit, I did not know whether or not I would ever be able to actually pursue such a claim until approximately July 2015. I knew that my ability to pursue a medical malpractice action would be entirely contingent upon finding a qualified expert witnesses with knowledge of the applicable standard of care who were willing to support my claim. I did not know in 2014 whether or not I would actually be able to pursue a malpractice claim against Dr. Jackson.[1]

---

[1] She stated in her deposition, "I'm a nurse [and] so I have understanding of things and so I questioned things." Referring to the decision to file a civil action as

(continued…)

> I recall [my bankruptcy attorney who filed the petition] explaining to my husband and I [sic] that Maryland law exempts from bankruptcy money received as compensation for personal injuries.[2]

Declaration at ¶¶ 3, 4.

The record contains no other details about the conversation between Ms. Dennis and the bankruptcy lawyer, such as how the exemption issue came up or what questions Ms. Dennis actually posed to her lawyer and what answers she received.

### III.  **The Trial Court's Ruling**

While it is not necessary to repeat the entirety of the trial court's findings, we summarize the key points that the trial court found to be convincing, highlighting the particular findings and conclusions controlling the issues raised on appeal.

The trial court's findings tracked the basic elements that must be established in order to apply judicial estoppel. In *New Hampshire v. Maine*, the Supreme Court noted "several factors that typically inform the decision whether to apply the doctrine in a particular case . . . ." They are: (1) that a party's later position must

---

(…continued)
opposed to personally knowing that she had a claim, she stated that "thinking about it and doing it are two different things."

[2] Declaration at ¶ 4.

be "clearly inconsistent" with its earlier position in litigation; (2) that the party had succeeded in persuading a court to accept the earlier position "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;"[3] and (3) whether the party taking the inconsistent position was seeking "to derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine, supra*, at 750-751.

Where the first element is concerned, the trial court found that appellants had taken a position in the civil action that was inconsistent with their position in the bankruptcy case, because they failed to divulge to the Bankruptcy Court any "unliquidated claims, whether exempt or not" and then asserted the identical unliquidated malpractice claim that was known to appellants at the time of the bankruptcy proceeding.

As to the second element, the trial judge found that appellants succeeded in persuading the Bankruptcy Court to accept their position because they obtained discharge of all debts identified in their petition, where one of the Schedules in the petition asserted that appellants had no unliquidated claims. Further, the trial court found that "judicial acceptance of her inconsistent position here would create . . . the perception that the bankruptcy court [sic] was misled."

---

[3]*New Hampshire v. Maine, supra*, 532 U.S. at 750 (quotation omitted).

Parsing the third element, the trial court did not find that appellants obtained an unfair advantage over appellees specifically. Rather, the trial court found "that the undisputed facts compel the conclusion that [Ms. Dennis] derived an unfair advantage over her creditors, as at least part of the money she is seeking now, even with the punitive damages claims removed as seen in her amended complaint,[4] that is, lost wages and pre-petitioned medical expenses, could have been used to satisfy some of those claims." The trial judge was aware that when the nondisclosure problem was exposed, appellants attempted to neutralize the problem by petitioning the Bankruptcy Court to reopen the case and exempt the entire malpractice claim as an asset. Where appellees are concerned as the "opposing" parties herein, the trial court concluded that Ms. Dennis "derived an advantage over the defendant [sic] who could have negotiated with the trustee had this been raised at a time when it was still an active case. By the time the petition to reopen was filed, it was two years after the discharge."

As part of its findings, the trial court noted that in the jurisprudence of judicial estoppel there is effectively a fourth element that is important, i.e. that the two judicial proceedings must have a "meaningful connection." In that regard, the

---

[4] With leave of the court, appellants filed on July 10, 2018, an amended complaint that was identical to the original complaint except for removing the demand for punitive damages and removing the Hospital as a defendant. The demands for non-exempt prepetition medical expenses and lost wages remained.

trial court specified that there was a clear connection between the bankruptcy case and the civil action because appellants were "undeniably" suing to recover certain prepetition medical expenses, some of which had included the KCI debts.

In considering the defense of inadvertence or mistake, the trial court examined in detail how much Ms. Dennis knew at the time she filed her bankruptcy petition and required schedules. The trial court rejected the defense of mistake or inadvertence, noting that appellate courts interpret inadvertence narrowly, "such that the failure to comply with the bankruptcy court's disclosure duty is inadvertent only when a party either lacks knowledge of the undisclosed claim or has no direct motive for their concealment." Looking to the actions and knowledge of Ms. Dennis, the trial judge concluded:

> There is, in my view, in this case no dispute on the facts that she knew of the possibility of the claim and wanted to assert it prior to the bankruptcy filing. And I find that whether or not she knew of the specifics such as whether there was an expert that would support her position, is simply not relevant to the duty to disclose.[5]
>
> I also find, and let me just note on that, that I think any decision to the contrary would create a wholly undesirable result, which is that you . . . could simply avoid disclosing by not doing your due diligence as to

---

[5]"The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed.'" *Youngblood Group v. Lufkin Federal Savings & Loan Ass'n.*, 932 F. Supp. 859, 867 (E.D. Tex. 1996).

> whether your claim was [supportable] by putting off the question of whether you found an expert or not [sic].

The trial judge specifically relied upon the admissions in the sworn declaration of Ms. Dennis, identifying how far back in time appellant knew she wanted to file suit against Dr. Jackson – more than a year before filing her bankruptcy petition. The trial court emphasized that,

> when a plaintiff admits the factual basis for an undisclosed claim also contributed to [her] bankruptcy, courts have [] little problem finding that the debtor turned plaintiff had knowledge of the undisclosed claim during the bankruptcy proceedings,[6] given her statement in opposition to . . . the original motion to dismiss.

The trial court was aware that Maryland law effectively exempts as a bankruptcy asset any lawsuit damages obtained for personal injuries,[7] but that certain other damages associated with malpractice are not exempt. *See Calafiore*

---

[6] The trial court cited for this observation the same conclusion in *Robinson v District of Columbia*, 10 F. Supp. 3d 181, 188 (D. D.C. 2014).

[7] We use the phrase "effectively" because no Maryland statute explicitly states (or can state) that any particular property is exempt from the jurisdiction of the United States Bankruptcy Court. Rather, the Maryland Code exempts certain assets from "execution on a judgment." Specifically, the Maryland Code exempts from execution "money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief." Md. Cts. & Jud. Proc. § 11-504(b)(2). The effect of this statute on bankruptcy is indirect, but unmistakable. If no creditor of a successful plaintiff could ever execute a judgment by attaching exempt lawsuit proceeds, the exempted proceeds would also be worthless to all bankruptcy creditors and the Trustee.

*v. Werner Enterprises*, 418 F. Supp. 2d 795, 799-800 (D. Md. 2006) (noting that the Maryland Code does not exempt as a bankruptcy asset damages for lost wages, prepetition medical expenses, injuries to property, and punitive damages). The trial judge thus reasoned that "where some of the claims asserted are not exempt, therefore, this is not a case where there is no motive [to conceal the malpractice claim]. . . you cannot say no harm, no foul in this case, is really the bottom line."[8]

Balancing the equities was certainly a part of the trial court's findings and conclusions. The trial judge recognized the key equitable factor on the plaintiff's side, i.e. that Ms. Dennis had presented claims of medical problems that were "both serious and debilitating." The trial court reasoned that those problems did not rise in significance above the nondisclosure problem for the bankruptcy creditors or the Trustee. The trial court found that a combination of equities on the defense side was more important, i.e. not only the bad effect of the nondisclosure on both the creditors and appellees but also the harm to the bankruptcy system itself, effectuated by a party who was represented by an attorney and who made a conscious decision not to disclose. For these reasons, the trial court determined that it was not equitable to allow appellants to obtain an "inappropriate windfall" by being allowed to pursue the civil action.

---

[8] *Calafiore*, *supra*, at 799-80 ("To the extent any aspects of the plaintiff's plea for damages fall into nonexempt categories, [the petitioner] did have a motive to conceal.").

IV.     **Standard of Review**

We recognize the bedrock principle that "[j]udicial estoppel is an 'equitable doctrine' invoked at a court's discretion to prevent 'improper use of judicial machinery.'" *Hardy v. United States*, 988 A.2d 950, 964 (D.C. 2010) (quoting *New Hampshire v. Maine*, *supra*, at 750).   We review the use of judicial estoppel according to the abuse of discretion standard, and we will affirm where the trial court has satisfied all of the requirements for invoking the doctrine.  *See Atkins v. 4940 Wisconsin, LLC*, 93 A.3d 1286, 1289-90 (D.C. 2014).

V.     **Issues Raised on Appeal**

In their brief, appellants identify two issues in challenging the judgment. They are: (1) "[w]hether the Superior Court properly applied judicial estoppel in the absence of a finding that Mr. and Mrs. Dennis would derive an unfair advantage or impose an unfair detriment on the opposing parties if not estopped;" and (2) "[w]hether, considering all of the facts and circumstances, a genuine issue of material fact exists regarding whether the Dennis' failure to identify this action as 'personal' or 'exempted' property on their previously filed bankruptcy schedules was a calculated attempt to improperly use the judicial machinery to derive an unfair advantage or impose an unfair detriment on the Defendants."

At oral argument, when asked to identify any abuse of discretion, counsel for appellants raised three points.  One, counsel stated that the trial court abused its

discretion when it "focused on the wrong issue" by finding that the detriment befalling appellees was the inability to settle the malpractice claim while appellants were in the bankruptcy process. Two, counsel stated that the record contains no proof that Ms. Dennis personally gained any advantage over appellees, because the inability to settle the malpractice claim was (in counsel's words) "ethereal." Finally, appellants' counsel argued that the trial court abused its discretion by not submitting to a jury the factual question of whether Ms. Dennis gained any advantage for herself over appellees, or whether her nondisclosure created a disadvantage specifically to appellees.

VI.   **Analysis**

Our review of the record convinces us that neither of the two issues briefed by appellants has merit.  Scrutinizing additional points offered by appellants in oral argument, we examine and adjudicate the two principal questions and the added sub-issues as follows.

Issue One:  Alleged Lack of Findings of Unfair Advantage Over Appellees or Imposing an Unfair Detriment Upon Appellees.

As to the first issue raised by appellants, their argument lacks merit for several reasons, and we discuss them in light of the Supreme Court's teaching as to the overarching purpose of judicial estoppel.  In *New Hampshire v. Maine*, the Supreme Court summarized the purpose of the doctrine of estoppel, saying:

> [I]ts purpose is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment. . . . Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion.

*New Hampshire v. Maine*, *supra*, 532 U.S. at 749-50 (internal quotations and citations omitted).

As the issue before us is articulated in appellants' brief, it actually involves two sub-parts, one narrow and one broad. The narrow issue is whether the trial court actually failed to make any findings that the nondisclosure resulted in an unfair detriment to appellees specifically. The trial court clearly did make an unfair-detriment finding, and it is incorrect to assert that there were no findings at all on this subject. On the record at the hearing on December 18, 2018, the trial judge identified the detriment to appellees as the inability to attempt to negotiate a settlement with the Trustee. While appellants refer to it dismissively in their briefing, it was still something specific and not without logic or clarity. Whether a settlement finally would have been achieved is unknown, but the discrete detriment was the lost opportunity to negotiate. Another unfair detriment is that, if the Trustee had been aware of the claim, the Trustee "might have . . . decided not to pursue it." *Moses v. Howard University*, 606 F.3d at 799.

Appellants raise a broad issue when they argue that judicial estoppel can only apply where the unfair detriment is suffered by a party that participated as the

debtor's "opponent" in both the bankruptcy case and the subsequent civil action. This position reveals that appellants misunderstand why judicial estoppel exists and what kind of proof is required to support a judgment based on that doctrine. The pivotal issue is not about whether the nondisclosure caused an unfair detriment to a particular party in a subsequent civil action, but rather whether the nondisclosure created an unfair detriment to the creditors or whether it obstructed the bankruptcy system itself. *See, e.g. Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). As another court cogently observed,

> The rationale for . . . decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his [or her] benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

*Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996).

The core fallacy in appellants' position is the belief that there was no actual detriment to the appellees because neither the doctor nor the Hospital was a

creditor in the bankruptcy proceeding and thus, neither could have been an "opposing party" in bankruptcy. Appellant is wrong, on multiple levels.

We are aware that in some of the case law on judicial estoppel, there are references to proving that there was an unfair detriment to the "opposing party" or an unfair advantage over the "opposing party." However, in those cases (such as *New Hampshire v Maine, Atkins v. 4940 Wisconsin, LLC,* and others cited in appellants' brief), it was only happenstance that the defendant in the civil action was also a creditor in the related bankruptcy proceeding. Thus, it is not surprising that those decisions referred to detriment to or advantage over the "opposing party." It was natural and logical to do so, because those references matched the facts. Nonetheless, the significance of those references should not be inflated to be a holding, or even a suggestion, that the opponent in the civil action had to have been in privity with the bankruptcy petitioner, in order for judicial estoppel to apply.

Quite to the contrary, in judicial estoppel litigation involving nondisclosure in bankruptcy, it is not uncommon for a movant seeking judicial estoppel in a civil action to be a party that was not a bankruptcy creditor. The classic example is seen where the undisclosed cause of action was one for employment discrimination, and where the job loss caused by the alleged discrimination was partly the reason for the inability to pay debts and the need to file a bankruptcy petition. *See, e.g.,*

*Moses v. Howard Univ. Hospital*, *supra*, (a Title VII action for retaliation)[9]; *Robinson v. District of Columbia*, *supra*, (a claim of race discrimination under Title VII and retaliation under the District of Columbia Whistleblower Protection Act). In the present case, the parties seeking protection through judicial estoppel likewise were not creditors before the Bankruptcy Court; but this is not in any way a bar to invoking the doctrine.

We are constrained to add that, in complaining that appellees were not specifically disadvantaged as bankruptcy creditors, appellants conflate judicial estoppel with the doctrine of equitable estoppel. Equitable estoppel applies to preclude a party from contradicting testimony or pleadings successfully maintained in a prior judicial proceeding against the identical adverse party, where the adverse party acted in reliance upon the opponent's prior position and now faces injury if a court were to permit the opponent to change positions. *See Thoubboron v. Ford Motor Co.*, 809 A.2d 1204, 1212-13 (D.C. 2002) (citations and quotations omitted). In other words, privity between the parties must be present in both proceedings.

In contrast, judicial estoppel requires neither privity between the parties in the earlier proceeding nor detrimental reliance upon the opponent's position. *See In Re Coastal Plains, supra,* at 205 ("Because the doctrine is intended to protect

---

[9] 42 U.S.C. § 2000e *et seq.*

the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not required.") (italics in original); *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 214 (1st Cir. 1987) ("[H]arm to an opponent is not an invariable prerequisite to judicial estoppel."); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982) ("Unlike equitable estoppel, judicial estoppel may be applied even if detrimental reliance or privity does not exist."). Thus, appellants' contention is without legal support.

Above all, the fallacy plaguing the appellants' position is firmly debunked by the Supreme Court's admonition in *New Hampshire v. Maine* that the three elements of judicial estoppel it recognized are not the proverbial straightjacket appellants believe them to be. The Supreme Court stated:

> In enumerating these factors, *we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.* Additional considerations may inform the doctrine's application in specific factual contests. In this case, we simply observe that the factors [herein] firmly tip the balance of equities in favor of barring New Hampshire's present complaint.

*New Hampshire v. Maine*, *supra*, at 751 (emphasis added).

The net meaning of the above-quoted caveat in *New Hampshire v. Maine* is that the doctrine may be applied where a bankruptcy petitioner's knowing failure to disclose an asset creates any one of several kinds of inequities. They include,

but are not limited to (1) creating an unfair detriment to the creditors; (2) obtaining an unfair advantage for the petitioner over the creditors; (3) creating an unfair detriment to the opponent in the subsequent civil action; or (4) creating an unfair advantage for the petitioner over the opponent in the civil action. Thus, any one of these scenarios could have sufficed as a basis for the judgment herein.

In the present case, the trial court found evidence of more than one of the above inequities: (1) harm to the bankruptcy creditors because of the nondisclosure; (2) creation of an advantage for the appellants in the bankruptcy case because the nondisclosure left them free to sue for damages that would have been subject to potential distribution to the creditors; and (3) harm to the appellees by eliminating their opportunity to settle the potential claims against them while the bankruptcy case was still open. The record contains solid evidence of all three.

Where the creditors are concerned, the nondisclosure hid from them the potential proceeds of litigation that were not exempt as bankruptcy assets. They included lost wages, prepetition medical expenses and other monetary relief not cloaked with bankruptcy exemption under Maryland law. The United States Bankruptcy Code plainly addresses the issue of property alleged to be exempt from treatment as an asset of the bankruptcy estate. The Code expressly recognizes that exemption of property as a bankruptcy asset may arise from "State or local law." 11 U.S.C. § 522(b)(3). However, the Code also provides, "The debtor shall file a

list of property that the debtor claims as exempt under subsection (b) of this section." 11 U.S.C. § 522(l). This is the platform for litigating any objections to application of the exemption in question. Yet, appellants did not comply with the statutory duty to identify allegedly exempt assets.

Hiding altogether a mixed civil action potentially having both non-exempt and exempt claims cannot be excused because of the existence of the state exemption. It is the bankruptcy Trustee to whom an exemption issue must be addressed – in the open and on the record of the Bankruptcy Court. Ergo, because of the nondisclosure of the entire potential civil action, the creditors in appellants' bankruptcy proceeding were cheated out of a possible resource for satisfying at least some of their claims.

As the person appointed by the Bankruptcy Court to manage the disposition of all assets and debts, the Trustee's ability to function is central to the integrity of the bankruptcy system. The nondisclosure left that officer of the Bankruptcy Court powerless to perform one of a Trustee's key statutory duties, i.e. applying the assets to the claims where it is possible and practical to do so.[10] Where a potential

---

[10] When a person files a petition for bankruptcy, this "creates an estate . . . comprised of all . . . property," including "all legal or equitable interests of the debtor in property at the commencement of the case." § 11 U.S.C. § 541(a)(1). As the legal representative of the estate, appointed by the Bankruptcy Court, the Trustee has the authority to file suit to assert the debtor's claims. 11 U.S.C. § 323. The Trustee also may seek a settlement of a claim available to the debtor and

(continued…)

civil action is identified as an asset in bankruptcy, the Trustee is obligated and empowered to determine what to do with it. The Trustee has a menu of options as to potential nonexempt damages, such as pursuing a settlement or explicitly abandoning the lawsuit as an asset but with an assignment of interest to the creditors. When this entire range of choices for the Trustee is silently eviscerated by a petitioner who hides a cause of action, the bankruptcy system itself has been evaded and disrespected. That is exactly what happened in the present case.

Second, the trial court concluded that the nondisclosure fostered an unfair advantage for the appellants. Where an unfair advantage to appellants was concerned, the trial court specifically concluded that appellants did gain a distinct advantage for themselves, because whatever damages they might achieve in the civil action would never have been taken by the creditors left behind in bankruptcy. That is a palpable, dollars and cents advantage. The trial court found that, without the consequences of judicial estoppel, appellants would reap the advantage of "an inappropriate windfall" because they would be able to keep the advantage of the discharge of more than $86,000.00 in debts while suing for a significantly larger sum of money, none of which could have been applied to their debts. The trial judge wrote:

---

 (…continued)
submit the proposed settlement to the Bankruptcy Court for approval, pursuant to Fed. R. Bankr. P. 9019.

> The amount discharged, while small . . . compared to the recovery sought in this case, is for most of the world, a huge sum of money. More than $86,000. Additionally, while the amount of medical bills that are being discharged is absolutely just a tiny fraction of that amount, in my view, that misses the point . . . . It's all of the creditors who were harmed, not just that one [KCI].

Third, the unfair detriment to the appellees as the civil action opponents was not a token matter. We reject the argument of appellants that the trial court "focused on the wrong issue" by concluding that the detriment to appellees was short-circuiting their chance to settle the malpractice claim while appellants were in the bankruptcy process. Counsel opined that the likelihood of settling the case at that point was "ethereal." This viewpoint has no merit for several reasons. First, the law does not require the trial court to measure the likelihood of success of a settlement attempt in order to find that the lost opportunity to attempt a settlement was, in and of itself, a form of "unfair detriment." Moreover, the trial court below recognized the practicalities of why the loss of the chance to negotiate a settlement was not a token bump in the road. In short, the trial court stated:

> As a matter of common sense, the incentives for the trustee to do anything at that point – no matter what kind of accounting system was used by the creditors, that loss has already been accounted for two years later. So the incentives are completely different for the trustee and for the creditors, than it would have been if it had been disclosed at the time required.

The trial court's findings covered all iterations of unfair advantage and unfair detriment arising from the nondisclosure.

Issue Two: Sufficiency of the Evidence Regarding Mistake or Inadvertence.

The second issue raised by appellants is similarly devoid of merit. Appellants argue that the trial court committed reversible error by not submitting the substance of the defense to a jury for adjudication. Related to that point, appellants contend that the proper analytical model that the trial court was obliged to use was the traditional summary judgment regimen, requiring the trial judge to draw all factual inferences in favor of appellants and forbidding the trial judge from making any findings on disputed facts. As an extension of this argument, appellants state that we, as an appellate court, are obliged to revisit the summary judgment decision de novo and not analyze the trial court's decision using the abuse of discretion standard.

We need not discuss any further the trial court's reasoning for discounting the merits of the defense of mistake or inadvertence, because appellants do not actually contend that those factual findings were incorrect or illogical. Rather, they argue that the trial court should not have made any such factual findings at all.

Alluding to Ms. Dennis' statement that she made a "legal mistake" and that she reasonably believed she was not required to reveal the claim before the Bankruptcy Court, appellants contend that a "jury should be allowed to consider all

[of the] facts and decide whether Ms. Dennis' failure to identify this case in her schedules was a confused blunder or an intentional lie to mislead the courts." Below, we explain why appellants are mistaken in their arguments regarding de novo review and the injection of a jury into judicial estoppel.

*De Novo Review.* The argument that an appellate court must review de novo the use of judicial estoppel is a concept that has no basis in law. As a threshold matter, it is well established in this jurisdiction that "[t]he nature of a motion does not turn on its caption or label, but rather its substance." *Nuyen v. Luna*, 884 A.2d 650, 654 and n.3 (D.C. 2005) (citing *Wallace v. Warehouse Employees Union No. 730*, 482 A.2d 801, 804 (D.C. 1984)). Here, since the type of relief requested is a judgment based upon the equitable remedy of judicial estoppel, which is most certainly a discretionary decision of a trial judge, our role is only to determine whether the trial court abused its discretion. Moreover, judicial estoppel manifestly does not hinge upon the underlying merits of the complaint, as is typically seen in the grant or denial of a motion for summary judgment. Thus, it does not matter whether the request for relief through judicial estoppel is brought to the trial court by way of a motion to dismiss, a motion for summary judgment, or any other procedural vehicle.

While this court has always employed the abuse of discretion standard of review to issues of judicial estoppel, we have never formally held that abuse of

discretion is the correct standard. We hereby do so. We previously saw no reason to state such an obvious holding, because this principle was self-evident from the fact that the doctrine is an equitable one, imposed or withheld as a discretionary matter.

Without question, the abuse of discretion is the correct standard for reviewing the imposition or denial of judicial estoppel, for all of the reasons succinctly explained by the United States Court of Appeals for the First Circuit in *Alternative Systems Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23 (1st Cir. 2004). Holding that "the applicable rubric is abuse of discretion," the First Circuit based its conclusion on four lines of reasoning:

> First, the Supreme Court has explained that 'judicial estoppel is an equitable doctrine invoked by a court at its discretion.' Second, deferential review often is appropriate for matters in which the trial court is 'better positioned . . . to decide the issue in question.' Judicial estoppel is such a matter. Determining whether a litigant is playing fast and loose with the courts has a subjective element. Its resolution draws upon the trier's intimate knowledge of the case at bar and his or her first-hand observations of the lawyers and their litigation strategies. Third, abuse of discretion is a flexible standard, and the amorphous nature of judicial estoppel places a high premium on such flexibility. Last – but far from least – the other courts of appeals to have addressed this question have settled unanimously on abuse of discretion review. A court of appeals should always be reluctant to create a circuit split without a compelling reason, and none exists here.

*Id*. at 30-31 (quotations and citations omitted). [11]

*Factual Determinations by a Jury*. There is no role for a jury in the determination of whether to apply judicial estoppel, and the mere fact that a trial judge must consider and weigh disputed issues of fact does not mean that part of the judicial estoppel decision making must be left to a jury. This is clear from several standpoints. First, since judicial estoppel is manifestly an equitable remedy, there is no right to submit the decision making to a jury. This court has firmly established that where the issue at hand and the remedy sought are equitable in nature, there is no constitutional right to a jury trial on the issue. *In re Estate of Johnson*, 820 A.2d 535, 538 (D.C. 2003); *Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n*, 641 A.2d 495, 505-06 (D.C. 1994); *E.R.B. v. J.H.F.*, 496 A.2d 607, 610-11 (D.C. 1985). Here, appellants do not go so far as to claim a constitutional right to a jury trial on judicial estoppel. Rather, their only

---

[11] At the present time, all of the federal circuits reviewing jury-demandable cases, except the Sixth Circuit, recognize abuse of discretion as the proper standard for reviewing judicial estoppel decisions. However, the Sixth Circuit has now "questioned the continued viability" of de novo review because of the Supreme Court's description of judicial estoppel as "an equitable remedy 'invoked by a court at its discretion.'" *Javery v. Lucent Techs., Inc.*, 741 F.3d 686, 697 (6th Cir. 2014) (internal citation omitted). Adopting the reasons "ably set forth" by the First Circuit in *Alternative Systems*, the District of Columbia Circuit has added yet another reason why de novo review is an inappropriate standard of review, stating: "De novo review would displace the discretion of the district court to apply judicial estoppel with the discretion of the appellate court to do so. We see no sense in this." *Marshall v. Honeywell Tech. Systems*, 828 F.3d 923, 928 (D.C. Cir. 2016).

premise for demanding that the defense be decided by a jury is bootstrapping from the fact that the case came to us through a summary judgment motion. This is a classic error of exalting form over substance.

Second, there are numerous situations in which judges must weigh disputed facts in order to exercise discretion on matters that are the obligation of a trial judge to assess. They include, for example, ruling on the sufficiency of the qualifications of an expert witness[12] and determining whether to exclude a juror for cause based upon facts involving that person's demeanor.[13] Adjudicating a demand for relief through judicial estoppel is only another such example.

---

[12] *E.g., Karamychev v. District of Columbia*, , 811-12 (D.C. 2001) (affirmance of a trial court's assessment of a police officer's qualifications to interpret the results of a certain roadside sobriety test). "The admission or exclusion of expert testimony . . . is committed to the trial court's broad discretion." *In re Melton*, 597 A.2d 892, 901 (D.C. 1991) (en banc). "The trial judge is in the best position to evaluate the qualifications of an expert witness. We have therefore accorded the trial court wide latitude in this area, and the trial judge's decision should be sustained unless it is manifestly erroneous." *Karamychev*, 772 A.2d at 812 (internal quotations and citations omitted).

[13] *E.g., Steele v. D.C. Tiger Market*, 854 A.2d 175, 179 (D.C. 2004) (judge's decision to strike a potential juror during voir dire upheld where the judge assessed the person's demeanor based upon that person's problematic "affect" and "cadence of his voice"). Assessing demeanor, in real time, is as fact-bound as a process can be. "'A trial judge . . . has broad discretion in deciding whether to excuse a juror for cause' to achieve that goal, among other reasons because the judge's assessment of a potential juror's demeanor plays 'such an important part' in evaluating the juror's ability to serve." *Id.* (quoting *Rease v. United States*, 403 A.2d 322, 325 (D.C. 1979) (quoting *Ristaino v. Ross*, 424 U.S. 589, 595 (1976)).

In addition, at oral argument, we asked appellants' counsel to identify the basis for contending that the trial court was obliged to allow a jury to decide the merits of the defense of mistake/inadvertence. Counsel cited three cases which he asserted all involved delegating that fact-finding function to a jury as part of the judicial estoppel analysis. They are: *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894 (6th Cir. 2004); *Ryan Operations G.P. v Santiam-Midwest Lumber Co.,* 81 F.3d 355 (3rd Cir. 1996); and *Access Limousine Service, Inc. v. Service Ins. Agency, LLC*, No. TDC-15-3724, 2016 U.S. Dist. LEXIS 145044 (D. Md., October 19, 2016).

None of the above three decisions supports appellants' argument in any way. In each instance, appellants rely on what was nothing more than either an appellate reversal of the imposition of judicial estoppel or the decision of a trial judge not to invoke the doctrine. In all three cases, the natural result was allowing the underlying merits of the civil action to go forward in a trial on the merits.

None of the three decisions mentioned whether any party had even requested a jury trial. Whatever was left for a jury or a judge to decide certainly had no connection whatsoever to the adjudication of judicial estoppel issues. We summarize and distinguish those decisions below.

In *Eubanks*, the United States Court of Appeals for the Sixth Circuit reversed the District Court's grant of a motion to dismiss based upon judicial

estoppel.[14]   The Sixth Circuit concluded that the District Court had failed to consider distinct evidence that the initial failure to disclose a potential civil action was inadvertent.  The Circuit observed:

> The record established that Plaintiffs amended the bankruptcy schedules once, and attempted to amend it a second time, to finally place Defendant on the schedule as a creditor and potential asset.  Defendant, however, provides no additional evidence that Plaintiffs demonstrated fraudulent intentions toward the court. Additionally, the record establishes that Plaintiffs put the court and the Trustee on notice through correspondence, motions, and status conference requests, thus supporting the argument that the claim's omission on the schedules was merely inadvertent, particularly since Plaintiffs' desire to pursue a liability claim against Defendant was a fact known by all parties involved.

*Id*. at 898-99.

No party in *Eubanks* ever suggested that a jury should have performed any fact finding on any aspect of the estoppel issue, and the Sixth Circuit never questioned the trial court's role as the sole fact-finder on judicial estoppel.  If anything, the appellate court reversed the dismissal because the trial court did not properly discharge its fact-finding obligation.

In *Ryan Operations G.P.* (hereinafter "*Ryan Operations*"), the United States Court of Appeals for the Third Circuit reversed the application of judicial estoppel in granting summary judgment against Ryan Operations, the plaintiff below.

---

[14] The motion to dismiss was filed pursuant to Fed. R. Civ. P. 12(b)(6).

Appellant therein was a homebuilding company and had a claim against one of its suppliers of wood trim, used in constructing thousands of homes. *Ryan Operations*, *supra*, at 357. It filed a bankruptcy petition, seeking reorganization rather than discharge of debts. It failed to list on a bankruptcy schedule a potential claim against certain suppliers, who were the defendants and movants below. *Id*.

The Third Circuit rejected the contention that "intent to mislead or deceive could be inferred from the mere fact of nondisclosure." *Id*. at 364. The trial record revealed that both the Trustee and the creditors were well aware of the supplier claims before the bankruptcy case was closed. The Third Circuit concluded that "there is no basis in this case for inferring that Ryan deliberately asserted inconsistent positions in order to gain advantage – i.e., that it played fast and loose with the courts." *Id.* at 363. Several factual elements demonstrated that Ryan Operations did not intend or receive any "appreciable" benefit from the nondisclosure. *Id*.[15] Nothing in this appellate decision discussed the use of a jury to resolve the factual dispute about alleged inadvertence of the nondisclosure or the

---

[15] For example, "the reorganization plan that the court and creditors approved authorized Ryan to retain and enforce claims against any entity and to adjudicate homeowner claims." *Id.* at 364. In addition, the reorganization plan granted to the creditors the right to receive "91 percent of any future recovery on the pine trim claims, as well as the obligation to cover 91 percent of the loss if Ryan is unable to recover the expenses incurred in the repair and replacement program from defendants." *Id*. at 363.

lack of an unfair advantage to the plaintiff from the nondisclosure. The Third Circuit remanded the case for further proceedings on the merits. *Id*. at 365.

In *Access Limousine Service* (in the United States District Court of Maryland) the plaintiff filed a civil action against its former insurance company for negligently failing to renew the plaintiff's policy. As a result of the non-renewal, Access could not operate its business, and it filed a bankruptcy petition. There was no doubt that the plaintiff had failed to disclose the claim against its insurance agency during the bankruptcy proceeding. The petition was dismissed because Access failed to file required monthly operating reports, failed to make required fee payments, and failed to provide information requested by the Trustee. *Id*. at *4-5, 12. The Bankruptcy Court never issued an order of discharge. Thus, the creditors were left free to sue on their own unpaid debts. *Id*. at *18.

The defendant insurance company filed a motion for summary judgment, seeking relief through judicial estoppel. The United States District Court for the District of Maryland denied that motion. *Id*. at *22. The District Court examined and weighed the issue of the petitioner's intent, where the nondisclosure was concerned. The trial court stated,

> The fact that Access did not act diligently to take all necessary steps to obtain a bankruptcy discharge and instead had its claim dismissed in a manner that prevented a potential windfall in the event of recovery may be indicative of a lack of intent to mislead. Thus, there is, at a minimum, a genuine issue of material fact

on whether Access's failure to schedule the negligence claim was intentional.

*Id*. at \*17.

Even though the District Court denied the motion because a material factual dispute existed, rather than make its own findings to resolve the dispute, the important point is that the factual dispute about the defense of mistake or inadvertence was not submitted to a jury. The District Court simply denied the motion, and the estoppel issue came to an end.[16]

For all of the reasons set forth above, we are satisfied that the trial court's findings and conclusions on judicial estoppel are supported by the evidence and applicable law. We find no error of law or abuse of discretion in any aspect of the trial court's rulings. The judgment stands.

*So ordered*.

---

[16]We certainly do not subscribe to the practice of denying a request to impose judicial estoppel simply because some of the facts are disputed. It is the trial court's duty to make findings as to whether the party with the burden of proof has satisfied that burden and to grant or deny the requested relief accordingly. It is not clear whether this is what the United States District Court meant in denying the motion.